586 A.2d 362

**Paul P. SLAWEK, M.D., Appellee,**

v.

**COMMONWEALTH of Pennsylvania, STATE BOARD OF MEDICAL EDUCATION AND LICENSURE, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 7, 1990.

Decided Jan. 29, 1991.

John F. Alcorn, Joyce McKeever, Velma A. Boozer, for appellant.

F. Emmett Fitzpatrick, III, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

The question in this case is whether Commonwealth Court exceeded its authority in modifying an order of the State Board of Medical Education and Licensure (hereinafter "the board") which revoked the medical license of a doctor for three months because he failed to secure medical malpractice insurance for a nine month period.

Paul M. Slawek, M.D., has practiced medicine in Pennsylvania since 1967. From 1968 to 1985 he maintained a general medical practice in Philadelphia. In 1979, Slawek enrolled in a diagnostic radiology program at the Medical College of Pennsylvania, and he completed the program in 1983. During the time Slawek was enrolled at the Medical College of Pennsylvania, he hired other physicians to maintain his private medical practice.

When Slawek completed his training at the end of 1983, he was offered a position on the faculty, to begin in February 1984. Slawek accepted the position, but in January, while he was on vacation, he was notified that the doctor who was then servicing his medical practice in Philadelphia abruptly left, without notice, and that there were patients in the office waiting to be seen. Slawek immediately chartered a plane, returned to Philadelphia, and began seeing patients shortly after his arrival. Slawek's efforts to persuade the other doctor to return were unavailing, as were efforts to hire a replacement, and Slawek himself remained in his private practice in lieu of assuming his teaching position.

In February of 1984 the Medical Professional Liability Catastrophe Loss Fund notified Slawek that he did not have the required medical malpractice coverage. Slawek did not initiate medical malpractice insurance until October 5, 1984, nine months after he resumed practice.

Because of Slawek's failure to secure medical malpractice insurance in a timely fashion, an administrative complaint was filed before the State Board of Medical Education and

Licensure for violation of Section 701 of the Health Care Services Malpractice Act, Act of October 15, 1975, P.L. 390, 40 P.S. § 1301.701, and the Board's regulation at 49 Pa. Code § 17.223.[1] The board, after hearing, revoked Slawek's license for three months and placed him on probation thereafter.

Slawek then appealed this order to Commonwealth Court. Commonwealth Court denied his appeal on the ground that he had waived the issue he was attempting to raise on appeal. This court granted allocatur and remanded the case to Commonwealth Court for consideration on the merits. On remand, Commonwealth Court modified the board's order and removed the suspension. 124 Pa.Cmwlth. 481, 556 A.2d 525. This court then granted the board's petition for allowance of appeal.

■ Among the questions addressed by Commonwealth Court was whether the board had abused its discretion. The court determined that it had not. This determination was based upon Section 701(f) of the Health Care Services Malpractice Act, 40 P.S. § 1301.701(f), which provides that a physician's failure to carry medical malpractice insurance "shall result in the suspension or revocation of the health care provider's license by the licensure board." As Commonwealth Court put it, the board did not abuse its discretion because it had no discretion to abuse. We agree.

1. Section 701(a) of the Health Care Services Malpractice Act provides:
 Every health care provider as defined in this act, practicing medicine ... in the Commonwealth shall insure his professional liability only with an insurer licensed or approved by the Commonwealth of Pennsylvania, or provide proof of self-insurance in accordance with this section.
 Section 701(f) provides:
 The failure of any health care provider to comply with any of the provisions of this Section or any of the rules and regulations issued by the director shall result in the suspension or revocation of the health care provider's license by the licensure board.
 Board regulation 49 Pa.Code § 17.223 provides:
 Failure to comply with the requirements of the Health Care Services Malpractice Act (40 P.S. § 1301.101–1301.1006), the regulations issued thereunder, and this subchapter shall result in the suspension or revocation of license after a formal hearing.

The court reversed the board, however, because it determined that the board's order was "unduly harsh under the facts of this case." 124 Pa.Cmwlth. at 485, 556 A.2d at 527. The lower court's authority for this determination was *Hendrickson v. State Board of Medicine,* 108 Pa. Commwlth.Ct. 124, 130, 529 A.2d 78, 81 (1987), which stated:

> This court may consider a claim of abuse of discretion by an administrative agency and may modify the order if the penalty is unduly harsh.... In doing so, we are limited to determining whether the penalty is reasonable in light of the violation.

124 Pa.Cmwlth. at 484, 556 A.2d at 526.

Oddly, the issue which Slawek raises on appeal to this court is whether the board abused its discretion in revoking his medical license. As Commonwealth Court correctly stated, the revocation of the license was not an abuse of discretion because the statute requires it. If that is what the case is about, all discussion should end here, for Commonwealth Court properly resolved this question against Slawek below. We believe, however, that a more accurate statement of the question in the case is that presented by the board: whether Commonwealth Court exceeded its scope of review when it reversed the order of the board revoking Slawek's license for a three month period.

Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704, sets forth a court's authority on review of an agency decision:

> The court shall hear the appeal without a jury on the record certified by the Commonwealth agency. After hearing, the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of subchapter A of Chapter 5 (relating to practice and procedure of Commonwealth agencies) have been violated in the proceedings before the agency, or that any finding of fact made by

the agency and necessary to support its adjudication is not supported by substantial evidence.

Act of April 28, 1978, P.L. 202, No. 53, § 5.

This standard of review of agency action, which provides that agency action shall be affirmed unless it violates any of the enumerated requirements, is self-explanatory, except, perhaps for the provision that agency action may be reversed in the event that it is "not in accordance with law." This phrase might refer to other applicable statutes or to the common law as it has been established in this court's or the intermediate appellate courts' caselaw. At a bare minimum, it refers to this court's statement of the broad guidelines governing review of agency decisions. In what is perhaps this court's seminal case on appellate review of administrative decisions, *Blumenschein v. Pittsburgh Housing Authority*, 379 Pa. 566, 572–73, 109 A.2d 331, 334–35 (1954), some rather fundamental principles were established:

> By a host of authorities in our own and other jurisdictions it has been established as an elementary principle of law that courts will not review the actions of governmental bodies or administrative tribunals involving acts of discretion, in the absence of bad faith, fraud, capricious action or abuse of power; they will not inquire into the wisdom of such actions or into the details of the manner adopted to carry them into execution. It is true that the mere possession of discretionary power by an administrative body does not make it wholly immune from judicial review, but the scope of that review is limited to the determination of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. That the court might have a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; *judicial* discretion may not be substituted for *administrative* discretion.

What this court stated in *Blumenschein* is as valid in 1990 as it was in 1954.[2] In the absence of bad faith, fraud, capricious action or abuse of power, reviewing courts will not inquire into the wisdom of the agency's action or into the details or manner of executing agency action. It is conceivable, of course, that our requirement that the agency not act capriciously might, in a given case, be coterminous with Commonwealth Court's requirement in its *Hendrickson* case that the penalty be reasonable in light of the violation. As a general rule, however, Commonwealth Court's statement of its rule is overbroad in that it invites the court to substitute its view of what it reasonable for that of the agency. For that reason, we believe that the proper review of the agency's action, assuming that it is not defective under the self-explanatory requirements of the Administrative Agency Law, is *not* whether its order was reasonable, but whether it was made in "accordance with law" (i.e., whether it was made in bad faith, and whether it was fraudulent or capricious).[3] As the *Blumenschein* court put it, a reviewing court may interfere in an agency decision only when "there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions."[4] Since there is no allegation of fraud or bad faith—also mentioned *supra* by *Blumenschein*—our

**2.** Only last year, this court unanimously cited this passage with approval in *Mathies Coal Co. v. Department of Environmental Resources,* 522 Pa. 7, 18, 559 A.2d 506 (1989).

**3.** Should the adjudication violate some other statute which might be applicable to a particular case, that would also be a part of the consideration of whether the decision was made in accordance with law. There is no allegation that any other statute is relevant to this case.

**4.** *Blumenschein* was written, of course, before the Administrative Agency Law was enacted. Nonetheless, it remains part of the law of the Commonwealth. Thus, a reviewing court may reverse or modify an agency order if, under the terms of the Administrative Agency Law, the adjudication is in violation of constitutional rights, if it is not in accord with agency procedure, if any finding of fact is not supported by substantial evidence, or if it is not in accordance with law. It is not in accordance with law, under *Blumenschein,* if the agency decision represents "a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions."

inquiry in this case resolves itself into whether the agency's action was capricious or a flagrant abuse of discretion.

 The board justified its decision as follows:

The Board's burden is to craft a disciplinary order that takes into account mitigating factors, yet, deter others from engaging in similar conduct, and maintains public confidence in the integrity of the medical profession. If there was a market for professional liability insurance which covers a past uninsured period, the Board would order that the Respondent's license be revoked and that after a designated active period of revocation, the revocation be stayed if and when the Board would receive evidence that such insurance was secured. However, the Board recognizes that it is extremely difficult, and perhaps impossible, to find an insurance carrier that will write insurance to cover a past uninsured period. Alternatively, the Respondent could self-insure his liability for the presently uninsured nine-month period of his practice, but the Board recognizes that this is a prohibitively costly alternative. Consequently, the Board has decided to issue an order which will preclude the Respondent from practicing medicine for a brief time, but which does not require him to cure his past insurance violation as a pre-condition to returning to practice.

Adjudication and Order, The State Board of Medicine, 10.

Slawek practiced medicine for a nine month period without securing professional malpractice insurance in blatant violation of law.[5] The board considered mitigating factors, viz., that Slawek was "thrust into a situation where he unexpectedly had to supply medical services," Board's Adjudication at 9, and was mindful of its duty to deter others who might wish to engage in similar irresponsible conduct. It is self-evident that the board's decision was not capricious or a flagrant abuse of discretion, and it is not for this court or any reviewing court to substitute its judgment of what is

---

5. The board found as a fact that Slawek required all physicians who applied to work for him to present evidence of professional liability insurance coverage. Finding of Fact 10, p. 6 of the board's Adjudication and Order.

reasonable for that of the agency whose decision is being reviewed.

Commonwealth Court's approach, left unchecked, would swallow up the whole system of administrative adjudications, in which administrative bodies having expertise in specific areas of law are entrusted to fashion administrative remedies that are fair and appropriate. Absent abuses of the sort specified in the Administrative Agency Law or *Blumenschein*, appellate courts should exercise judicial restraint in reviewing administrative orders.

The Order of Commonwealth Court is reversed and the order of the State Board of Medicine is reinstated.

McDERMOTT, J., did not participate in the consideration or decision of this case.