600 A.2d 244

**FEDERAL KEMPER INSURANCE COMPANY, Petitioner,**

**v.**

**INSURANCE DEPARTMENT OF the COMMONWEALTH of Pennsylvania, Constance B. Foster, Insurance Commissioner, Respondents.**

Commonwealth Court of Pennsylvania.

Argued June 12, 1991.

Decided Nov. 25, 1991.

546

Lawrence G. McMichael, for petitioner.

Terrance A. Keating, Asst. Counsel, for respondents.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH, and PELLEGRINI, JJ.

SMITH, Judge.

Federal Kemper Insurance Company (Federal Kemper) petitions for review of an order of the Insurance Commissioner (Commissioner) denying Federal Kemper's request for extraordinary circumstances relief from the private passenger automobile insurance rate reductions mandated by the Act of February 7, 1990, P.L. 11 (Act 6), which amended certain provisions of Titles 18, 42, and 75 of the Pennsylvania Consolidated Statutes.

On May 21, 1990, Federal Kemper, after reducing its rates as required by Act 6, filed for extraordinary circumstances relief with the Insurance Department (Department) alleging that its rates were inadequate to the extent of 18.2% and requesting a rate increase to cover the alleged shortfall. Federal Kemper's request was filed pursuant to 75 Pa.C.S. § 1799.7(b)(3), which provides:

> An insurer aggrieved by the rate reductions mandated by this subsection [which concerns the rate rollbacks mandated by Act 6] may seek relief from the commissioner, which relief may be granted when the commissioner deems necessary in extraordinary circumstances.

Neither the Department nor the Commissioner will grant relief under Section 1799.7(b)(3) unless the insurer's anticipated rate of return on statutory surplus falls below 12%, a figure which the Department and Commissioner contend reflects the most recent ten-year average rate of return of the property and casualty insurance industry as a whole.[1] The Department denied Federal Kemper's request after determining from data supplied by Federal Kemper that the insurer would earn a 16% after-tax rate of return on statutory surplus with its existing rates as reduced by Act 6. Federal Kemper thereafter appealed to the Commissioner who, after a hearing before a hearing officer, disapproved Federal Kemper's request for relief under Section 1799.-7(b)(3).

Federal Kemper raises the following issues for this Court's review:

1. Whether the Commissioner applied the correct burden of proof in rendering [her] Order and Adjudication.

2. Whether the Commissioner's determination that the use of a 17–month partially retrospective rating period to adjudicate an [extraordinary circumstances] filing constitutes illegal retrospective ratemaking.

3. Whether the Commissioner's determinations concerning the loss cost savings resulting from Act 6 are erroneous.

4. Whether the Commissioner's determinations concerning the effect of increased costs arising out of Act 6 are erroneous.

5. Whether the Commissioner's determination that a rate filing under Act 6 need not include a contingency provision violates [The] Casualty and Surety Rate [Regulatory] Act.

6. Whether the Commissioner's determination that the Department need not consistently employ a 2 to 1 premi-

---

1. For a description of the methodology by which the Department analyzes extraordinary circumstances relief requests, see *Prudential Property and Casualty Insurance Co. v. Department of Insurance*, 141 Pa.Commonwealth Ct. 156, 162, n. 2, 595 A.2d 649, 652, n. 2 (1991).

um to surplus ratio in its evaluation of various rate filings is erroneous.

At argument Federal Kemper raised an entirely new issue which was first discussed in its Reply Brief, that is, whether the Commissioner applied the correct legal standard to extraordinary circumstances relief procedures by measuring an insurer's expected rate of return against a constitutional standard of confiscation as opposed to a statutory standard of inadequacy, set forth in The Casualty and Surety Rate Regulatory Act (Rate Act)[2]. Issues not raised in the petitioner's statement of questions involved or suggested thereby will not ordinarily be considered, even if discussed in the brief. Pa.R.A.P. 2116(a); *Appeal of Gemstar/Ski Bros.,* 133 Pa.Commonwealth Ct. 115, 574 A.2d 1201 (1990). This Court shall therefore not review this issue except to note that it has previously been discussed and resolved in favor of the Commissioner in *Prudential Property and Casualty Insurance Co. v. Department of Insurance,* 141 Pa.Commonwealth Ct. 156, 595 A.2d 649 (1991), as have other issues raised by Federal Kemper this matter.

I

█ Federal Kemper first argues that the Commissioner erred by placing upon it the additional burden of disproving the Department's analysis of Federal Kemper's extraordinary circumstances relief request, which Federal Kemper characterizes as the Department's "alternative rate filing." Federal Kemper Brief, p. 12. Federal Kemper does not dispute that it has the burden of proving that there exist extraordinary circumstances justifying relief under Section 1799.7(b)(3), but contends, rather, that it satisfied that burden by filing a rate increase request with supporting data establishing that the requested rates comply with the Rate Act. Further, Federal Kemper argues that as a result of its filing, the burden shifted to the Department to prove the unreasonableness of the insurer's filing as occurs, accord-

2. Act of June 11, 1947, P.L. 538, *as amended,* 40 P.S. §§ 1181–1199.

ing to Federal Kemper, in proceedings under the Rate Act. Therefore, Federal Kemper contends that the Commissioner erred in basing her adjudication upon the Department's "alternative rate filing" which fails to address whether Federal Kemper's rate request complies with the Rate Act, and advocates a totally new approach to the issue.

Federal Kemper's argument fails for a number of reasons. As discussed in *Prudential* and more recently in *Liberty Mutual Fire Insurance Co. v. Department of Insurance*, 142 Pa.Commonwealth Ct. 282, 597 A.2d 235 (1991), extraordinary circumstances proceedings under Section 1799.7(b)(3) are not the same as Rate Act proceedings. Federal Kemper's supposition that it carried its burden of proving its justification for extraordinary circumstances relief by filing for rates which it deems to be in compliance with the Rate Act is clearly belied by the express provisions of Section 1799.7. The mandated rate rollbacks of Act 6 are deemed to comply with the Rate Act pursuant to Section 1799.7(c). It does not follow, therefore, that Federal Kemper has proven the presence of extraordinary circumstances by the mere filing of its request for a rate increase that also purportedly complies with the Rate Act.

Moreover, there is no foundation for characterizing the Department's analysis of Federal Kemper's relief request as an "alternative rate filing" or an affirmative defense, which Federal Kemper advances as an auxiliary argument. The methodology of the Department simply analyzes, by incorporation of the anticipated costs and savings to an insurer under Act 6, the rate of return an insurer is anticipated to receive, and as such constitutes evidence of whether or not extraordinary circumstances are present. As found in *Prudential*, the Commissioner acts within her discretion in accepting the Department's methodology as a means to examine whether extraordinary circumstances exist; and this Court is bound by the Commissioner's findings of fact in this regard so long as they are supported by substantial evidence. An insurer, of course, may challenge by evidence of its own the underpinnings and/or application

of the Department's analysis and argue that the insurer's calculations are superior. *Id.* This fact does not mean, however, that the burden of proof has been improperly shifted to the insurer which has the burden of proving the existence of extraordinary circumstances throughout the proceedings. Federal Kemper's argument is therefore without merit.

## II

Federal Kemper next argues that the Commissioner erred by using a seventeen-month partially retrospective period as a time frame in which to determine the existence of extraordinary circumstances because this would result in retroactive ratemaking. This issue was raised, discussed, and determined in favor of the Commissioner and Department in *Prudential,* which controls the disposition of the issue herein.

## III

 Federal Kemper argues that the Commissioner's determinations concerning certain Act 6 loss reduction factors (cost savings to insurers anticipated from the implementation of certain provisions of Act 6) are erroneous and contrary to law. This Court notes that an agency commits an error of law if its adjudication "represents a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions." *Prudential,* 141 Pa.Commonwealth Ct. at 164, 595 A.2d at 653. *See also Slawek v. State Board of Medical Education & Licensure,* 526 Pa. 316, 586 A.2d 362 (1991). This principle is especially significant since the issue raised by Federal Kemper involves a certain latitude of speculation about future events and their effect upon an insurer's rate of return. As this Court stated in *Insurance Department v. Pennsylvania Coal Mining Ass'n,* 26 Pa.Commonwealth Ct. 348, 357–58, 363 A.2d 823, 827–28 (1976):

Ratings of insurance risks, particularly as to new and untested coverages, necessarily entails assumptions and

projections whether characterized as informed guesses or informed judgment. This is precisely why the judiciary should not second guess or substitute its judgment for that of those whose business it is to make such projections.... The want of experience under an expanded program of insurance coverage gives added importance to judgment decisions by those whose experience qualifies them to make the same.

Should substantial evidence support the Commissioner's findings in these areas of judgment, this Court is bound to affirm her order and adjudication. *Id.* A review of the record and arguments of the parties convinces this Court that the Commissioner did not commit a manifest abuse of discretion in adopting the prognostications of the Department over those more dire ones of Federal Kemper and that the Commissioner's findings are supported by the record.

Federal Kemper first contends that the Commissioner overstates the impact of Act 6's verbal threshold in reducing an insurer's costs. Act 6 precludes a limited-tort insured from suing for non-economic damages (*i.e.*, pain and suffering), with some exceptions, unless the insured has sustained a "serious injury" (the so-called verbal threshold). 75 Pa.C.S. § 1705. The Commissioner found that bodily injury claims will be reduced as a result of this prohibition, based upon the premise that medical claims in excess of first party benefits will, for limited-tort insureds not suffering from "serious injuries," largely be handled by the insured's health insurance. Federal Kemper contends, on the other hand, that such claims will not be reduced as the Commissioner surmised since it is likely that once an injured insured has exhausted his or her first party benefits, the insured's health carrier will direct the insured to submit any unpaid medical bills to and make a demand upon the tortfeasor's carrier for bodily injury coverage. The Commissioner's interpretation of the interplay of coverages, however, is more reasonable:

If health insurance were secondary to the tortfeasor's liability coverages, as Federal Kemper contends, then

insurance consumers in Pennsylvania would be greatly prejudiced. One of the basic tenets of no-fault insurance is swift care to injured parties and prompt payment of medical claims. Under Federal Kemper's interpretation, health insurance would not pay for medical bills while the issue of liability for the underlying accident is worked out, which could take years if the issue is litigated. Insureds will be forced to pay the medical bills or forego treatment in the interim.

Adjudication, p. 28–29; see 75 Pa.C.S. § 1719. Moreover, the evidence of record supports the Commissioner's findings and not Federal Kemper's argument. N.T., pp. 227–29. As the Commissioner pointed out, Federal Kemper failed to present direct evidence to support its argument. Adjudication, p. 30.[3]

Federal Kemper next argues that the Commissioner erred by concluding that by eliminating a portion of bodily injury claims, the verbal threshold "greatly" reduces first party claims [4]. This argument is based upon conflicting interpretations of statistical data for the Philadelphia metropolitan area which indicates that although the accident frequency rate in and around Philadelphia is 10% higher than in the rest of the Commonwealth, first party claim frequency is 220.1% higher and bodily injury claim frequency is 363% higher. The Commissioner logically interpreted this data to mean, based upon testimony presented by the Department, that the disproportionate first party and bodily injury claims in Philadelphia are fueled not only by accident frequency but the local legal practice of building first party

3. Federal Kemper also argues with regard to this issue that the Commissioner erred by basing the loss reduction factor for decreased bodily injury claims upon the experience of Michigan, which had implemented a similar automobile insurance overhaul act. *Prudential.* Federal Kemper points out that while Pennsylvania permits insureds to carry as little as $5,000 in first party coverage, Michigan requires unlimited first party coverage. The Commissioner's determination that health insurance will in many cases cover any excess above the minimal first party coverages supports her reliance on the Michigan data.

4. Actually, the Commissioner reduced anticipated first party claims for purposes of her analysis by only 3.1%.

claims to support bodily injury claims for pain and suffering. Thus, if bodily injury claims are reduced by the introduction of limited tort insureds, then the frequency of first party claims would also diminish because the incentive to pursue these claims would correspondingly diminish. Federal Kemper essentially argues, on the other hand, that the data can be viewed in another light—that first party and bodily injury claims can only be statistically linked to the frequency and severity of accidents. Nonetheless, its own witness admits that "claims consciousness" and "claims building" are factors which affect the prevalence of bodily injury claims. N.T., pp. 85–86. Accordingly, the Commissioner did not commit a manifest abuse of discretion in arriving at her conclusion from the evidence before her.

Federal Kemper next argues that the Commissioner erred by accepting the Department's estimates of cost savings because of Act 6's prohibition against certain duplicate recoveries over the estimates proposed by Federal Kemper.[5] See 75 Pa.C.S. § 1722. This issue hinges upon the issue of whether health insurance is excess to only first party benefits or to bodily injury claims as well. As this Court has determined that the Commissioner's resolution of this latter issue should not be disturbed, the same result must be applied to the Commissioner's findings concerning cost savings arising from the prohibition against duplicate recoveries.

Federal Kemper next argues that the Commissioner erred by accepting the Department's anticipated cost savings resulting from the medical cap provisions of Act 6 over the prognostications of Federal Kemper. The Commissioner found that the Department's estimations were more reasonable because they were based upon data from the Health Care Financing Administration (HCFA) specific to Pennsylvania, while Federal Kemper based its estimations on HCFA data gleaned from the United States as a whole.

---

**5.** Act 6, prohibits duplicate recoveries between an insured's first party benefits and tortfeasor's bodily injury coverage; worker's compensation claims and bodily injury coverage; and a victim's health insurance and tortfeasor's bodily injury coverage.

Federal Kemper contends, without delineation, that the Commissioner ignored the "limitations" of the HCFA data which allegedly fails to account for uncapped Medicare and trauma center charges. It is clear from the record, however, that the Commissioner did account for uncapped charges at trauma centers by assuming that all treatment at these centers would be fully reimbursed, thus erring on the side of the insurers. To the contrary, Federal Kemper has provided no basis to show that its estimations of medical cap costs savings is superior to the one found by the Commissioner.

Federal Kemper next argues that the Commissioner erred by inflating the impact of the mandatory anti-fraud provisions of Act 6 and contends that because it already implements significant anti-fraud measures, the 5% costs savings anticipated by the Commissioner is unwarranted. The Commissioner determined, however, that the extent of the mandatory measures and the resulting unification of efforts will provide savings to all insurers even with their existing anti-fraud measures. *See* 18 Pa.C.S. § 4117; 75 Pa.C.S. §§ 1801–1828 (which deal with Act 6's mandatory anti-fraud measures). This Court cannot conclude that the Commissioner abused her discretion in making this conclusion in light of the comprehensive measures devised by the legislature. Moreover, there is nothing in the record, nor is there any other reason to conclude, that effective enforcement of Act 6's anti-fraud provisions will not occur as contended by Federal Kemper.

IV

■ Federal Kemper argues that the Commissioner erred by not factoring into her calculations the possibility of increased costs to insurers arising from Act 6's elimination of the prohibition against pleading and proving medical expenses below the mandatory first party benefit limit. Federal Kemper contends that if a plaintiff is permitted to plead and prove these costs at trial, juries will enter higher bodily injury awards based upon the evidence of the full

medical costs before them. Federal Kemper assigns a value of 8.2% to these increased costs.

The Commissioner dismissed Federal Kemper's reasoning on the grounds that most cases which go to trial are major ones where medical costs are over $10,000 and therefore, the issue only involves the impact of submitting amounts up to $10,000 or an additional $10,000 to the jury; that judges will probably instruct juries that the plaintiffs have been compensated for their medical costs, thus defusing their impact;[6] and finally, that Federal Kemper initially never gave any value to or even addressed this concern when it made its filing. Federal Kemper first advanced its argument of increased costs when it calculated an "alternate scenario" based upon the Department's contention that health insurance is excess only to first party benefits. For these reasons, the Commissioner found Federal Kemper's fears of increased costs very speculative and that the Department's "temporing factor" of 10% in favor of insurers would adequately cover any possible cost increase which might result. The record fails to demonstrate an abuse of discretion by the Commissioner in refusing to incorporate Federal Kemper's estimated cost increases.

## V

■ Federal Kemper argues that the Commissioner erred by failing to incorporate a contingency provision to cover unforeseen future costs and contends that the Rate Act mandates such a provision. Further, such a provision is absolutely required in light of all of the future disasters Federal Kemper sees visited upon insurers as a result of Act 6.

**6.** Federal Kemper contests this assumption on the premise that case law prohibits a jury from being informed of the availability of insurance. This case law, however, is designed to protect defendants from the resulting prejudice from such disclosure. *See Hannis v. Ashland State General Hospital*, 123 Pa.Commonwealth Ct. 390, 554 A.2d 574, *appeal denied*, 524 Pa. 632, 574 A.2d 73 (1989). The Commissioner contemplates only that the jury will be informed that the plaintiff has been compensated or reimbursed for his or her medical bills. That scenario works to the prejudice of neither party.

This argument fails for a number of reasons. First, as previously discussed, the procedures and analyses of the Rate Act are not applicable to extraordinary circumstances proceedings. *Liberty Mutual; Prudential.* The rate rollbacks, in fact, are deemed to comply with the Rate Act and thus would incorporate any contingency provision to which Federal Kemper is referring. *See* 75 Pa.C.S. § 1799.7. Further, the Rate Act does not mandate a contingency provision, but provides only that "due consideration shall be given to ... a reasonable margin for underwriting profit and contingencies...." 40 P.S. § 1183(a). It is also noted that some of the speculative concerns raised by Federal Kemper such as the impact of *DiFranco v. Pickard,* 427 Mich. 32, 398 N.W.2d 896 (1986), upon judicial interpretations of the verbal threshold, have been factored into the Commissioner's analysis. *See Prudential.* Moreover, should any of the disasters strike the industry which Federal Kemper fears, insurers may return to the Commissioner for extraordinary circumstances relief if warranted. *Id.*

## VI

Finally, Federal Kemper argues that the Commissioner erred by not using a 2 to 1 premium to surplus ratio in evaluating an insurer's extraordinary circumstances relief filing, as opposed to the particular premium to surplus ratio of each insurer which reflects the insurer's experience. The insurer in *Prudential* raised this identical issue, which was discussed and determined by this Court in favor of the Commissioner. Accordingly, Federal Kemper's argument is likewise rejected.

For the foregoing reasons, the Commissioner's order is affirmed.[7]

COLINS, J., concurs in the result only.

7. It must be noted that unlike the circumstances in *Prudential, Liberty Mutual,* and other Act 6 cases decided by this Court, there has been no challenge to the competency of the Department's witnesses and their testimony in this matter. Based upon defects in certain testimony,

558

## ORDER

AND NOW, this 25th day of November, 1991, the order of the Insurance Commissioner is hereby affirmed.

this Court vacated the Commissioner's order and remanded the matter to her in, among others, *Prudential* and *Liberty Mutual.* In this case, however, this Court notes that the Department's witnesses were fully conversant with their testimony and provided the Commissioner with substantial evidence in those areas found lacking in *Prudential* and *Liberty Mutual,* and other Act 6 cases.