**Suresh Chandra GHOSH, M.D., Petitioner,**

v.

**PENNSYLVANIA BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 6, 1997.

Decided Dec. 2, 1997.

Kevin H. Wright and Denise Juliana, Blue Bell, for petitioner.

Gerald S. Smith, Harrisburg, for respondent.

Before DOYLE and FLAHERTY, JJ., and JIULIANTE, Senior Judge.

FLAHERTY, Judge.

Suresh Chandra Ghosh, M.D., (Ghosh) petitions for review of the November 16, 1996 order of the State Board of Medicine of the Bureau of Professional and Occupational Affairs (Board). The Board adopted the conclusions of law and the findings of fact of a hearing examiner and suspended the medical license of Ghosh for 6 days for his failure to timely pay an emergency surcharge levied by the Medical Professional Catastrophic Loss Fund (CAT fund or fund). The hearing examiner had originally entered an order suspending Ghosh's license for 12 days, which the Board modified to 6 days. We affirm.

Ghosh is a cardiovascular surgeon. Ghosh was billed in the amount of $12,230 due December 15, 1995 for an emergency surcharge assessed by the CAT fund pursuant to the Health Care Services Malpractice Act[1] (HCSMA or the Act). Despite several notices to Ghosh of his obligation to pay the assessed surcharge, he failed to pay the amount due until sometime in June 1996, only after formal disciplinary proceedings had been initiated by the Board in March 1996 when an order to show cause was filed against Ghosh. Although Ghosh pleaded financial hardship, the hearing examiner concluded that "[d]espite Respondent's protestations of financial hardship, the hearing examiner is not persuaded that Respondent did all that he could to pay the emergency surcharge until the instant li-

---

1. Act of October 15, 1975, P.L. 390, No. 111, *as amended,* 40 P.S. §§ 1301.101—1301.1006.

cense disciplinary action was brought." (Hearing Examiner's Adjudication at p. 8.)

■ The sole issue which Ghosh presents is: whether a suspension of a medical license for violation of the HCSMA due to late payment of an emergency surcharge represents a violation of constitutional protection, as the Act as applied is void for vagueness, because the Act does not specifically require mandatory participation in the fund and does not put physicians on sufficient notice that nonparticipation or late payment of a surcharge will result in suspension of license.[2]

Initially, Ghosh contends that the only requirement which the HCSMA imposes is that medical practitioners maintain basic malpractice insurance coverage. Ghosh maintains that the HCSMA does not require participation in the CAT fund and because it does not require such participation, it cannot be read as to require that he pay the emergency surcharge. Specifically, Ghosh relies on principles of statutory construction to buttress his argument. Ghosh points out the difference in language, on the one hand, between Section 811(c) of the Act, 40 P.S. § 1301.811(c) which provides that certain medical partnerships that acquire their insurance from the Joint Underwriting Association "shall be required to participate" in the fund and Section 701(a)(2) of the Act, 40 P.S. § 1301.701(a)(2) which states that providers with less than 50% of their practice in Pennsylvania "shall not be required to contribute or be entitled to participate in the fund", and on the other hand, the language of § 701(a)(1)(I) of the Act, 40 P.S. § 1301.701(a)(1)(i) which merely provides that physicians with more than 50% of their practice in Pennsylvania "shall be entitled to participate in the fund." Ghosh contends that this linguistic difference requires a find-

ing that the legislature intended that physicians with more than 50% of their practice in Pennsylvania have a right to participate in the CAT Fund but that there is no requirement that they do so and he is thus under no statutory obligation to pay the surcharge.

■ However, this argument is unpersuasive because it ignores the plain language of the Act which permits the Insurance Commissioner to "determine and levy an emergency surcharge on all health care providers then *entitled* to participate in the fund." 40 P.S. § 1301.701(e)(3) (emphasis added). This provision permits the Commissioner to levy the emergency surcharge upon a physician who is merely "entitled" to participate in the CAT fund regardless of whether the physician has actually participated in the CAT fund previously or has a need to participate in the CAT fund or is required to participate. The record sufficiently establishes that Ghosh is entitled to participate in the CAT fund. *See, e.g.,* "Response of the Defendant, Suresh C. Ghosh, M.D. to the Order to Show Cause of the Commonwealth of Pennsylvania...." (R.R. at 9a–14a.) By the Commissioner causing the bill for the surcharge to be sent to Ghosh, the Commissioner "determined and levied an emergency surcharge on" Ghosh who was one of the "healthcare providers then entitled to participate in the fund" pursuant to the plain language of § 1301.701(e)(3). Thus, the issue of whether "participation in the fund is mandatory" as it is for those partnerships which obtain insurance through the Joint Underwriting Association is not the dispositive issue. Rather, the question to be answered for purposes of whether the Commissioner could determine and levy the surcharge against Ghosh and, therefore, whether Ghosh was required to pay the surcharge is: whether Ghosh was

**2.** Appellate review over an agency adjudication is limited to determining whether the agency action is in violation of the constitutional rights of the appellant, or is not in accordance with law or that the provisions of 2 Pa.C.S. §§ 501—508 (relating to practice and procedure of Commonwealth agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. 2 Pa.C.S. § 704. *See also Slawek v. Board of Medical Education and Licensure,* 526

Pa. 316, 586 A.2d 362 (1991). In addition, whether the agency's adjudication is "not in accordance with law" includes reviewing whether "the agency decision represents a 'manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions.'" *Slawek,* 526 Pa. at 322 n. 4, 586 A.2d at 365 n. 4 (quoting *Blumenschein v. Pittsburgh Housing Authority,* 379 Pa. 566, 573, 109 A.2d 331, 335 (1954), *appeal dismissed,* 350 U.S. 806, 76 S.Ct. 68, 100 L.Ed. 724 (1955)).

entitled to participate in the CAT fund. As the record establishes that he was entitled to participate in the fund, the Commissioner could levy the surcharge against Ghosh consistent with the statute.

Moreover, Ghosh's suggestion that because the statute nowhere in explicit terms requires a healthcare provider to pay the surcharge once it is determined and levied by the Commissioner, then there is no statutory obligation to render such a payment borders on the unreasonable. That the legislature would empower the Commissioner to levy and determine a surcharge upon all providers who are entitled to participate in the fund but not thereby intend that those so surcharged would be obliged to pay suggests that the legislature intended an absurd result. This is contrary to the fundamental rule of construction that the "General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1).

Moreover, reading the Act to impose an obligation to pay the emergency surcharge on all healthcare providers entitled to participate in the CAT fund comports with its purpose, which is, *inter alia,* to make available professional liability insurance at a reasonable cost. *See* Section 102 of the Act, 40 P.S. § 1301.102. This Court has previously concluded that

> If healthcare providers could elect not to participate in *contributing* to the Fund, it takes no special knowledge of logic or of human nature to conclude that "low risk" health care providers would withdraw, leaving the Fund to be financed by "high risk" insureds and almost inevitably assuring its depletion. Without the Fund which allows insurers to establish an actuarial basis for anticipation of needed reserves, insurers might again find malpractice an uninsurable risk and either drastically curtail or withdraw totally from participating in the market, in short, creating conditions for precisely the same "crisis" the legislation was designed to obviate.

*McCoy v. Commonwealth Board of Medical Education and Licensure,* 37 Pa.Cmwlth. 530, 391 A.2d 723, 727–28 (1978)(emphasis added). To find that the Commissioner could determine and levy the surcharge without such action causing a corresponding obligation upon those whom the levy was made to pay the surcharge would bring about the very situation this Court found unacceptable in *McCoy.*

Ghosh makes a second argument that the suspension of his license for failure to timely pay the surcharge is constitutionally infirm because the statute is void for vagueness as applied. Echoing his first argument, Ghosh alleges that since the Act does not clearly require participation in the Fund or clearly impose an obligation to pay the emergency surcharge, the imposition of a suspension of license for failure to timely pay is void for vagueness.

 Initially, we note a statute challenged on vagueness grounds is presumed to be constitutional and will not be declared otherwise unless it clearly, palpably and plainly violates the Constitution. *Singer v. Sheppard,* 464 Pa. 387, 346 A.2d 897 (1975). Thus, one who challenges the constitutionality of such statutes bears a heavy burden. *Replogle v. Pennsylvania Liquor Control Board,* 514 Pa. 209, 523 A.2d 327 (1987). Moreover, "[a]lthough at first blush a law may appear vague on its face and those subject to it without fair notice, however, it may withstand a constitutional challenge if it has been narrowed by judicial interpretation, custom and usage[.]" *Fabio v. Civil Service Commission of Philadelphia,* 489 Pa. 309, 315, 414 A.2d 82, 85 (1980).

██ With these principles in mind, we address Ghosh's second argument that the Act is unclear regarding whether he could suffer loss of his license as a result of his failing to pay the surcharge in a timely manner. Section 701(f) of the Act clearly provides that

> The failure of any health care provider to comply with *any* of the provisions of this section or any of the rules and regulations issued by the director [of the CAT fund] shall result in the suspension or revocation of the health care provider's license by the licensure board.

40 P.S. § 1301.701(f) (emphasis added). The language authorizing the Commissioner to determine and levy an emergency surcharge

on all health care providers adequately gives notice to all that if they are entitled to participate in the fund then the Commissioner is lawfully permitted to determine and levy upon them an emergency surcharge and they are thereby obliged to pay the emergency surcharge. Given the clear import of these statutory provisions, Section 701(f) of the Act clearly requires the suspension of a health care provider's license for such failure to pay the emergency surcharge in a timely fashion. We fail to detect any ambiguity in this statutory language. Moreover, to the extent that the statutory language standing alone possessed some ambiguity regarding the fact that healthcare providers who are entitled to participate in the fund are thereby obliged to pay the emergency surcharge, any such ambiguity was more than adequately cured by this court's interpretation of the Act in *McCoy v. Commonwealth Board of Medical Education and Licensure, supra.* See *Fabio, supra*(prior court interpretation of an otherwise potentially vague statute can cure the constitutional defect).[3]

As such, Ghosh has failed to carry his burden of proving that the Act is vague and that it clearly, palpably and plainly violates the Constitution. Accordingly, the order of the Board is affirmed.

### ORDER

NOW, December 2, 1997, the order of the Board of Medicine at Docket No. 0148–49–96, dated November 19, 1996 is hereby affirmed.

---

**3.** Our conclusion that there is no ambiguity in the statute is bolstered by the existence of 31 Pa.Code § 245.8 which provides that

(a) The basic coverage insurance carrier shall promptly notify the fund in accordance with [31 Pa.Code] § 245.6 (relating to remittance of emergency surcharge amounts) of the identity of those health care providers who have failed to pay the emergency surcharge.

(b) If a health care provider fails to comply with section 701(e) of the act (40 P.S. § 1701(e)) or this chapter, the Director of the Fund will notify the applicable licensure board for possible disciplinary action against the health care provider's license under section 701(f) of the act (40 P.S. § 1301.701(f)).

Reading the regulation in *pari materia* with the Act, we conclude that this obliterates Ghosh's argument that he had no notice that failure to pay in a timely fashion could subject him to disciplinary action. This is true, notwithstanding the fact that the Board did not specifically charge Ghosh with violation of any of the regulations contained in Title 31 of the Pa.Code.