**Julie Anne PEREZ, Notary Public, Petitioner**

v.

**BUREAU OF COMMISSIONS, Elections and Legislation, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 16, 2004.

Decided July 28, 2004.

Craig A. Sopin, Philadelphia, for petitioner.

Christal Pike–Nase, Harrisburg, for respondent.

BEFORE: McGINLEY, J., LEAVITT, J., and MIRARCHI, JR., Senior Judge.

OPINION BY Senior Judge MIRARCHI.

Julie Anne Perez (Perez) appeals from an order of the Acting Secretary of the Commonwealth (Secretary) revoking her notary public commission following her convictions of issuing bad checks and a related theft charge. The issues on appeal are: (1) whether the Secretary had "good cause" to revoke Perez' commission under Section 22 of The Notary Public Law (Law), Act of August 21, 1953, P.L. 1323, *as amended*, 57 P.S. § 168; and (2) whether the subsequent amendment to Section 22 of the Law should be retroactively applied to impose a less severe penalty upon Perez. We affirm.

In his adjudication and order, the Secretary made the following factual findings. Perez was a commissioned notary public operating an auto tag business in Philadelphia. As a full agent of the Department of Transportation (DOT), she was authorized to issue temporary licenses and vehicle registrations and collect required fees. She deposited the collected fees into her business account and sent the DOT her checks for the amount of the collected fees twice a week.

After 686 checks sent to the DOT were not honored by her bank due to insufficient funds in her account, Perez was charged with (1) 686 counts of committing an offense under Section 4105(a) of the Crimes Code, *as amended*, 18 Pa.C.S. § 4105(a) (issuing or passing a check knowing that it will not be honored by the drawee); and (2) 686 counts of committing an offense under Section 3927 of the Crimes Code, 18 Pa.C.S. § 3927 (theft by failure to make required disposition of funds received). Those counts were later

consolidated to one count for each offense. Perez pleaded guilty to the charges in the Court of Common Pleas of Dauphin County on October 18, 2001 and was sentenced to serve one-year probation and pay a $500 fine. She was also ordered to pay restitution and costs in the amount of $49,685.60. In a separate civil proceeding, the court suspended Perez' authority to issue temporary registration cards and plates until completion of her probation and payment of the remaining balance of the restitution.

On January 23, 2002, the Department of State, Bureau of Commission, Elections and Legislation (Department of State) issued an order against Perez to show cause why the Secretary should not revoke or suspend her notary public commission, or impose other restrictions on her commission pursuant to Section 22 of the Law. Section 22 then in effect provided in relevant part that "[t]he Secretary of the Commonwealth may, *for good cause*, reject any application, or revoke the commission of any notary public...." (Emphasis added.) Perez filed an answer and requested a hearing.

At a hearing held before the hearing examiner, Perez testified that in late 2000 or early 2001, she learned from her bank and the DOT that her checks sent to the DOT were being returned for insufficient funds; she later discovered that her employee, Teresa Rios, had been stealing the collected fees; Rios quit her job after being questioned about the missing fees; and the Philadelphia District Attorney's office thereafter began a criminal investigation of Rios. After the hearing, the Secretary revoked Perez' notary public commission, stating that while Perez presented persuasive evidence that her criminal conduct was not the result of fraud or her poor moral character, her inability to handle her business finances and her neglect to perform the duties of the notary public constituted good cause to revoke her commission. Perez' appeal to this Court followed.

■ Perez first contends that the Secretary did not have "good cause" to revoke her notary public commission under Section 22 of the Law.[1]

The term "good cause" under Section 22 is not defined in the Law. Undefined words or phrases should be construed according to their common and approved usage. Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903(a); *Glendon Energy Co. v. Borough of Glendon*, 656 A.2d 150 (Pa. Cmwlth.1995), *appeal denied*, 543 Pa. 705, 670 A.2d 644 (1995). Under its common usage, "good cause" means "[a] legally sufficient reason." Black's Law Dictionary 213 (7th ed.1999). It is also well established that statutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things and as such, they must be construed together as one statute, if possible. Section 1932 of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1932; *Fairview Township v. Fairview Township Police Ass'n*, 795 A.2d 463

---

1. This Court's scope of review of the Secretary's adjudication is limited to determining whether constitutional rights was violated, whether an error of law was committed, or whether necessary findings are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. In reviewing the agency's decision, the courts should not inquire into the wisdom, details or manner of the agency's action in the absence of bad faith, fraud, capricious action or abuse of discretion. *Slawek v. State Board of Medical Education & Licensure*, 526 Pa. 316, 586 A.2d 362 (1991). "That the court might have a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; *judicial* discretion may not be substituted for *administrative* discretion." *Id.* at 321, 586 A.2d at 365 (emphasis in original).

(Pa.Cmwlth.2002), *appeal granted,* 572 Pa. 744, 815 A.2d 1043 (2003). Consequently, it is necessary to examine provisions of the Law to ascertain the meaning of the term "good cause" intended by the Legislature.

■ Section 22 of the Law authorizes the Secretary to reject an application for commission *or* revoke the commission for good cause. Thus, the same standard of "good cause" is applicable in determining whether to reject the application for commission or revoke the already issued commission. Section 3 of the Law, 57 P.S. § 149, provides that "[a]ny citizen of Pennsylvania, being eighteen (18) years of age or over, *of known character, integrity and ability,* shall be eligible to the office of notary public ... if he shall be a registered elector in the Commonwealth." (Emphasis added.) Section 5 of the Law, 57 P.S. § 151, similarly provides that "[b]efore issuing to any applicant a commission as notary public, the Secretary of Commonwealth shall satisfy himself that the applicant is *of good moral character, and is familiar with the duties and responsibilities of a notary public.*" (Emphasis added.) When Sections 3, 5 and 22 are construed together, it is clear that the lack of good moral character and the inability to perform the duties and responsibilities of a notary public constitute good cause to reject an application for commission or revoke the commission.

■ At the hearing, Perez attributed her conduct of writing the 686 bad checks to her employee who allegedly stole the collected fees. In so attributing, Perez totally ignored the fact that she pleaded guilty to the charge of issuing those checks knowing that they would not be honored by her bank (18 Pa.C.S. § 4105(a)) and the charge of intentionally dealing with the DOT's funds as her own and failing to make the required payments (18 Pa.C.S. § 3927(a)). A defendant's guilty plea is an acknowledgment of participation in commission of an act with a criminal intent. *Commonwealth v. Anthony,* 504 Pa. 551, 475 A.2d 1303 (1984). The underlying criminal convictions may not be collaterally challenged in a subsequent civil proceeding before an agency. *Burnworth v. State Board of Vehicle Manufacturers, Dealers & Salespersons,* 139 Pa.Cmwlth. 21, 589 A.2d 294 (1991).

The facts and criminal intents established in the underlying criminal proceeding demonstrate Perez' failure to maintain the integrity and morality required to perform her duties as a notary public "to administer oaths and affirmations, certify copies and take depositions, affidavits, verifications, upon oath or affirmation and acknowledgments according to the law...." Section 16(a) of the Law, 57 P.S. § 162(a).

Further, the record amply supports the Secretary's findings regarding her inability to perform her duties as a notary public:

> It is apparent from her testimony that [Perez] exercised almost no accounting control over her business account, merely depositing into the account fees she received from her employee and writing checks from that account without ever balancing her checkbook. The fact that [Perez] issued 682[sic] bad checks totaling nearly $36,000 before discovering that she had been victimized by Ms. Rios demonstrates the extent of [her] neglect of her duties as a notary public. [Her] apparent inability to handle her business's finances ... provides clear evidence of incompetence, demonstrating that [she] unfortunately lacks the ability to continue to exercise her notary commission.

Secretary's Adjudication and Order, pp. 8–9.

We conclude, therefore, that the Secretary had good cause to revoke Perez' notary public commission pursuant to Section 22 of the Law.

 Perez next contends that the amendment to Section 22 of the Law, which became effective on July 1, 2003 after the Secretary rendered his decision on May 13, 2003, should be retroactively applied to allow consideration of a less severe penalty, such as suspension, a civil penalty or attendance at an educational course.[2]

Initially, it must be noted that even before the amendment, the Secretary had the discretion to impose less severe penalties than revocation under Section 22 of the Law which provided that the Secretary "may revoke" the notary public commission for good cause. In the order to show cause, the Department of State listed not only revocation but also suspension or other restrictions of the commission as the possible penalties that could be imposed upon Perez. The amendment now expressly sets forth the penalties which the Secretary was already authorized to impose upon a finding of good cause.

Further, under Section 1926 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1926, "[n]o statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." Section 1953 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1953, specifically provides that when a section or part of a statute is amended, "the new provisions shall be construed as effective only from the date when the amendment became effective." Hence, the amendment to Section 22 is not retroactively applicable to this proceeding.

Accordingly, the order of the Secretary in the above-captioned matter is affirmed.

### ORDER

AND NOW, this 28th day of July, 2004, the order of the Acting Secretary of the Commonwealth in the above-captioned matter is affirmed.

---

**2.** Section 22, amended effective July 1, 2003, provides in relevant part:

(a) The Secretary of the Commonwealth may, for good cause, reject any application, issue a written reprimand, suspend or revoke the commission of any notary public.

(b) The Secretary of the Commonwealth may, for good cause, impose a civil penalty not to exceed five hundred dollars ($500) for each act or omission which constitutes a violation of this act.

(c) The Secretary of the Commonwealth may, for good cause, order a notary to attend education courses for an act or omission which constitutes a violation of this act.