IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Prabhakara Rao Tumpati, M.D., :
:
Petitioner :
:
v. : No. 1361 C.D. 2023
: Submitted: September 9, 2024
State Board of Medicine (Bureau :
of Professional and Occupational :
Affairs), :
:
Respondent :

BEFORE: HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                         FILED: November 4, 2024


Prabhakara Rao Tumpati, M.D. (Petitioner), petitions for review from an October 25, 2023, final adjudication and order of the State Board of Medicine (Board) within the Bureau of Professional and Occupational Affairs (BPOA), finding Petitioner subject to disciplinary action and suspending Petitioner's license to practice medicine and surgery for a period of three years, including one year of active suspension. For the reasons that follow, we affirm.

The following facts are undisputed and are ascertained from the Board's final adjudication and order, which incorporated a Board Hearing Examiner's findings of fact and conclusions of law.

Petitioner was licensed to practice medicine and surgery in Pennsylvania in 2007. He practices in the fields of bariatric medicine and

management of sleep disorders.  In September 2019, the BPOA issued an order to show cause against Petitioner, alleging that he is subject to disciplinary action under the Medical Practice Act of 1985 (Act)[1] based on unprofessional conduct, failing to conform to quality standards of the profession, failing to maintain records, and dispensing medications improperly.  Petitioner initially denied the allegations, and the BPOA filed an amended order to show cause in March 2022.[2]  Specifically, the amended order to show cause alleged that Petitioner failed to meet the standard of care when conducting genital and/or physical examinations of three female patients, including an undercover investigator from the Bureau of Enforcement and Investigation posing as a patient, and one male patient.

The Hearing Examiner held hearings in June 2022 and January 2023.[3] One of Petitioner's female patients, K.K., testified that Petitioner examined her during a 2017 appointment for weight loss.  During the examination, Petitioner touched K.K.'s genitals without advising her that he would do so or of the reason for a genital examination, without providing a hygienic surface, privacy draping, or a chaperone, and without wearing sterile gloves.  Petitioner did not document the genital examination of K.K. in his medical records as required by Board regulations.

At the end of K.K.'s appointment, Petitioner walked K.K. to medical assistant Laura Parker (Medical Assistant) and left the area.  The Medical Assistant provided counseling to K.K. about the medications Petitioner's office was providing K.K.  The Medical Assistant then retrieved unlabeled medication vials, wrote

---

[1] Act of December 20, 1985, P.L. 457, *as amended*, 63 P.S. §§422.1-422.53.

[2] The amended order to show cause can be found at page 241a of the Reproduced Record.

[3] A full transcript of these proceedings can be found in the Certified Record at pages 608-2395; 2409-455.

information on prescription labels, adhered the labels to the vials, and handed the medications to K.K. without Petitioner reviewing the medications that were dispensed. Furthermore, Petitioner failed to document that certain medication was dispensed as required by the Achieving Better Care by Monitoring All Prescriptions Program (ABC-MAP) Act (ABC-MAP Act).[4]

Another female patient, R.L., testified that during a 2017 weight-loss examination, Petitioner touched R.L.'s belly and inner thighs near her genital area, and Petitioner did not explain to R.L. what he was doing or why, did not provide privacy draping or a hygienic surface, and did not wear sterile gloves.

At the end of R.L.'s appointment, Petitioner walked R.L. to the Medical Assistant and left the area. The Medical Assistant provided counseling to R.L. about the medications Petitioner's office was providing to R.L. The Medical Assistant then retrieved unlabeled medication vials, wrote information on prescription labels, adhered the labels to the vials, and handed the medications to R.L. without Petitioner reviewing the medications that were dispensed.

A male patient of Petitioner, C.O., testified that Petitioner conducted a weight-loss examination of him in 2017, in which Petitioner used a stethoscope on the outside of C.O.'s clothing and measured C.O.'s waist, but did not ask C.O. to lie down or disrobe and did not touch C.O.'s bare skin.

At the end of C.O.'s appointment, Petitioner walked C.O. to the Medical Assistant and left the area. The Medical Assistant provided counseling to C.O. about the medications Petitioner's office was providing to C.O. The Medical Assistant then retrieved unlabeled medication vials, wrote information on prescription labels, adhered the labels to the vials, and handed the medications to

---

[4] Act October 27, 2014, P.L. 2911, *as amended*, 35 P.S. §§ 872.1-872.40.

C.O. without Petitioner reviewing the medications that were dispensed. The Medical Assistant performed the same actions at C.O.'s follow-up appointment.

A Professional Conduct Investigator with the Bureau of Enforcement and Investigation testified that, in October 2017, she posed undercover as Petitioner's patient and scheduled a weight-loss appointment under the name S.S. During the appointment, Petitioner conducted an examination wherein he asked S.S. to move to an unupholstered couch and lie down, partially removed S.S.'s shirt and touched her bare skin, reached his hand into S.S.'s pants, and repeatedly touched S.S.'s skin below the pubic hairline. Petitioner did not advise S.S. of what he was doing or why, did not provide a hygienic surface, and did not wear sterile gloves.

At the end of S.S.'s appointment, Petitioner walked S.S. to the Medical Assistant and left the area. The Medical Assistant provided counseling to S.S. about the medications Petitioner's office was providing to S.S. The Medical Assistant then retrieved unlabeled medication vials, wrote information on prescription labels, adhered the labels to the vials, and handed the medications to S.S. without Petitioner reviewing the medications that were dispensed.

Gary S. Fischer, M.D., testified as an expert witness on behalf of the BPOA in its prosecutorial role before the Board. Dr. Fischer testified that Petitioner's conduct, as described in the testimony of K.K., R.L., and S.S., failed to meet the applicable standard of care. Dr. Fischer explained that the standard of care requires: that a physician explain to the patient the purpose of any genital examination, especially in a setting where a genital examination would not ordinarily be expected; that hygienic surfaces and privacy draping be provided for examinations involving disrobing; that a chaperone must be present for any genital examination; and that physicians wear sterile gloves while performing a genital

4

examination. Dr. Fischer also testified that the extent of the examinations Petitioner performed on K.K., R.L., and S.S. were not consistent with Petitioner's stated purpose of prescribing the correct medication.

Petitioner testified on his own behalf, stating that he performed examinations on K.K., R.L., and S.S. to confirm the presence of a hysterectomy scar for purposes of prescribing weight-loss medication that may cause birth defects. He stated he did not perform a similar examination on C.O. because C.O. was male and could not become pregnant.

After the hearing and briefing by the parties, the Hearing Examiner issued a proposed adjudication and order, including findings of fact and conclusions of law.[5] The Hearing Examiner credited the testimony of K.K., R.L., S.S., and C.O. over Petitioner's testimony to the extent of any conflict. The Hearing Examiner further credited Dr. Fischer's testimony concerning the requisite standard of care and held that Petitioner failed to meet that standard. The Hearing Examiner recommended the imposition of a civil penalty and a one-year suspension of Petitioner's medical license and that the suspension be stayed as long as Petitioner complies with conditions of probation, including use of a chaperone during examination of each patient.

In the final adjudication and order,[6] the Board adopted the Hearing Examiner's findings of fact and conclusions of law, but modified the Hearing Examiner's reasoning and sanction, determining that immediately staying the proposed license suspension in favor of probation, including chaperoned examinations, is not "sufficient based on the findings of fact and conclusions of

---

[5] The proposed adjudication and order are found on page 335a of the Reproduced Record.

[6] The final adjudication and order are found on page 384a of the Reproduced Record.

5

law." Final Order and Adjudication at 2. Instead, the Board determined that a one-year period of active (i.e., non-stayed) license suspension was warranted, followed by a period of probation, and it imposed that sanction in addition to the civil penalties and other sanctions recommended by the Hearing Examiner. *Id.* at 2-4.

Petitioner filed a petition for review and an application for supersedeas with this Court.[7, 8]

"[A]ppellate review of a [licensing] board's disciplinary sanction is limited to determining whether the board flagrantly abused its discretion or executed its duties or functions in a purely arbitrary and capricious manner." *Blair v. Bureau of Professional and Occupational Affairs, State Board of Nursing*, 72 A.3d 742, 750 (Pa. Cmwlth. 2013). The Board is the ultimate fact-finder and the Court is bound by the Board's determinations of evidentiary weight and credibility. *Id.* This Court must "exercise judicial restraint in reviewing" the Board's choice to impose a particular sanction. *Slawek v. State Board of Medical Education and Licensure*, 586 A.2d 362, 366 (Pa. 1991). If the Board explains, even briefly, the factors it considered in crafting a sanction, which could include mitigating factors and the need to deter similar conduct, it becomes "self-evident that the [B]oard's decision was not capricious or a flagrant abuse of discretion[,]" and this Court will affirm the sanction imposed. *Id.*

Presently, Petitioner does not challenge the findings of fact and conclusions of law set forth in the Board's final adjudication and order; rather,

---

[7] Our review of an order of the Board is limited to determining whether constitutional rights have been violated, whether findings of fact are supported by substantial evidence in the record, and whether any errors of law have been committed. *Gleeson v. State Board of Medicine*, 900 A.2d 430, 435 (Pa. Cmwlth. 2006).

[8] Petitioner's application for supersedeas was denied in a single-judge memorandum opinion dated December 8, 2023.

6

Petitioner only asserts that the Board erred or abused its discretion in imposing an active license suspension – a harsher sanction than the one recommended by the Hearing Examiner. Petitioner emphasizes that alternative punishment was available, including telemedicine. Furthermore, while the Board espouses an interest in public welfare and safety, the final adjudication and order was not issued until almost six years after the alleged offenses occurred. Finally, Petitioner maintains it is clear that he "truly cares about his patient[s'] wellbeing" by continuing to stay "on top of" research in the "ever emerging area of bed side manner." Petitioner's Brief at 10. He elaborates:

> Petitioner even took it a step further by trying to make the atmosphere feel more comfortable by having a "grandma's living room" ambiance. [] Petitioner also addresses reproductive issues that may arise from taking of weight[-]loss medications that are typically prescribed and how he handles physically examining patients so as not to offend, stress, or cause anxiousness. [] Petitioner clearly displayed the utmost care of the wellbeing of his patients in this manner. Therefore, the Board abused it's [sic] discretion by not taking these mitigating factors into consideration.

*Id.* (citations omitted).

The Board responds that it correctly assessed the seriousness of Petitioner's violations and thoroughly explained its reasons for imposing a harsher sanction than the one recommended by the Hearing Examiner. The Board asserts that it considered the entire record in this matter, including the detailed testimony of Petitioner's "appalling treatment of several female patients who placed their trust in Petitioner's care." Board's Brief at 18. The Board maintains that Petitioner exhibited a complete disregard of his patients' emotional and physical wellbeing during the examinations by "placing them in extremely vulnerable situations without

7

proper protection, explanation, or oversight by a chaperone." *Id.* Furthermore, the Board highlights Petitioner's "glaring pattern" of prescribing controlled substances in a manner that violated several laws and Board regulations. *Id.* The Board argues that Petitioner's repeated actions constitute an extreme violation of patient trust and necessitate severe consequences. Finally, the Board underscores its concern over Petitioner's failure to take responsibility for his actions and his refusal to acknowledge wrongdoing.

The Board further observes that it did indeed consider the only mitigating factor presented to it, i.e., the length of time that had passed since the violations occurred and the fact that Petitioner had not been charged with any further violations. The final adjudication and order acknowledges these facts; however, the Board emphasizes the egregious nature of Petitioner's actions and the importance of deterring future conduct of this nature. It is the Board's hope that the disciplinary sanction imposed "will send a message that this type of behavior is not acceptable in the practice of medicine in this Commonwealth" and will deter similar conduct from occurring. Board's Brief at 19.

Based on our review of the record and the particularly disturbing nature of the unchallenged findings of fact and conclusions of law made by the Board, we cannot say the Board erred in imposing the sanction of an active license suspension. Here, the Board thoroughly explained the reasons for its sanction in painstaking and graphic detail. Furthermore, the Board searched for mitigating factors but found none, noting that Petitioner failed to take responsibility for wrongdoing at any point, and instead consciously attempted to conceal his misconduct. We agree that the passage of time alone does not suggest mitigation. Under the circumstances, there is no indication in the record that the Board flagrantly abused its discretion or

8

executed its duties or functions in a purely arbitrary and capricious manner.  Because the reasoned basis of the Board's sanction in this case is "self-evident," *Slawek*, 586 A.2d at 366, we conclude the Board's final adjudication and order must be affirmed.

_____

MICHAEL H. WOJCIK, Judge

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Prabhakara Rao Tumpati, M.D.,      :
     :
              Petitioner      :
     :
          v.      : No. 1361 C.D. 2023
     :
State Board of Medicine (Bureau      :
of Professional and Occupational      :
Affairs),      :
     :
              Respondent : 

## O R D E R

AND NOW, this 4th day of November, 2024, the October 25, 2023, final adjudication and order of the State Board of Medicine is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge