620 A.2d 61

**Donald GASTER, Petitioner,**

v.

**DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 17, 1992.

Decided Jan. 6, 1993.

506

Peter A. Mardinly, for petitioner.

Anderson Lee Hartzell, for respondent.

Before SMITH and KELLEY, JJ., and BARRY, Senior Judge.

SMITH, Judge.

Donald Gaster (Gaster) petitions for review of the November 15, 1990 order of the Environmental Hearing Board (Board) which dismissed in part and sustained in part Gaster's appeal from the August 1, 1988 order of the Department of Environmental Resources (DER) requiring Gaster to control erosion and sedimentation at his sixty-seven acre site in Concord Township, Delaware County (Township). Issues raised for review are whether substantial evidence supports the Board's findings that a lack of coordination between the Township and DER and among the three DER bureaus involved had no bearing on Gaster's violations since they all occurred prior to that time; that Gaster's earth-moving activity involved an area exceeding twenty-five acres in violation of 25 Pa.Code § 102.31; that Gaster conducted earth-moving activity without an erosion and sedimentation control plan meeting the standards of 25 Pa.Code § 102.5; and that Gaster placed brush, stumps, and fill material within a floodway without an encroachment permit.

I

Gaster is the owner of the tract of land which is bisected by Concord Road and is referred to as the "Concord site" (Con-

cord site). The portion of the Concord site to which this matter relates contains approximately forty acres, and Green Creek flows along the site. On May 5, 1981, Gaster entered into a permit agreement with the Township under which Gaster would obtain a permit to remove soil from the Concord site and would conduct all earth removal activities at the site according to a plan dated December 26, 1980 and revised on February 1, 1981. The earth removal plan depicted an area of eighteen acres for earth removal and provided for erosion and sedimentation control facilities. The Township issued a soil removal permit to Gaster in March 1987 authorizing him to remove soil from the site, and Gaster began work soon thereafter.

In October 1987, Township inspectors noted that Gaster had disturbed sixty to seventy percent of the site, that it lacked soil erosion and sedimentation controls such as silt fences and hay bales, and that Gaster had exceeded the permitted earth moving and removal activities set forth in his original application for a soil removal permit. On October 21, 1987, the Township notified Gaster that it had revoked the May 5, 1981 permit agreement due to the lack of proper sediment and erosion control measures, the large quantities of fill material that were placed on the site, and due to numerous trees that were removed and flood plain and wetland areas that were disturbed and/or filled. The Township's notice to Gaster further directed: "All earth moving, earth removal, and related activities on your 67 acre Concord Road property must cease and desist immediately."

In response to a complaint from the Department of Transportation in February 1988, Edward Magargee, District Manager for the Delaware County Conservation District (Conservation District), inspected the site which revealed, among other things, that the disturbed areas appeared to exceed the eighteen acres as set forth in the original earth removal plan, that erosion was evident on much of the site, that brush removed from the disturbed areas was piled along the northwest bank of Green Creek, and that no erosion and sedimentation control measures existed. Magargee directed Gaster to

submit a plan showing disturbed and non-disturbed areas and a copy of the approved erosion and sedimentation control plan.

Thereafter, in a March 30, 1988 inspection of the site with Raymond Reganato, Gaster's civil engineer, Magargee noted several areas which Reganato considered to be non-disturbed but which Magargee determined had either been disturbed, were experiencing erosion, or had not been adequately resta-bilized after disturbance. Furthermore, Magargee noted that more than twenty-five acres of land were disturbed without a permit in violation of 25 Pa.Code § 102.31. Magargee informed Reganato that a revised topographic plan would have to be prepared. However, Gaster would not agree at that point to the preparation of a revised plan.

Magargee notified DER's Bureau of Dams and Waterways Management that the brush along Green Creek might constitute an unpermitted encroachment on a waterway in violation of 25 Pa.Code § 105.11, and as a result Gaster was notified of the violation and requested to contact the Bureau which he failed to do. Subsequently, on April 15, 1988, DER's Bureau of Soil and Water Conservation issued a notice of violation charging Gaster with violating provisions of the Clean Streams Law[1] and its regulations by disturbing more than twenty-five acres without an earth disturbance permit from DER, by failing to implement and maintain effective erosion and sedimentation control measures, and by causing or allowing accelerated erosion and sedimentation to leave the site and enter Green Creek. The notice of violation directed Gaster to submit a complete erosion and sedimentation control plan to the Conservation District by April 19, 1988 and requested that he attend a DER administrative conference on May 10, 1988. Gaster failed to submit an erosion and sedimentation control plan as directed.

An administrative conference was held on May 10, 1988 and was attended by Gaster and by representatives of the Township, DER's Bureau of Soil and Water Conservation, and the Conservation District. Gaster complained at the conference

1. Act of June 22, 1937, P.L.1987, *as amended,* 35 P.S. §§ 691.1–691.702.

that he was prevented from implementing erosion and sedimentation controls on the site by the Township's cease and desist order of October 21, 1987. The Township and DER assured Gaster that their concerns were identical in seeking to control erosion and sedimentation at the site. Gaster agreed to apply to DER for an earth disturbance permit, to draw up a remedial erosion and sedimentation control plan for the Conservation District to review, and to install remedial measures soon thereafter. DER, the Township, and Gaster agreed to meet at the Concord site later that month with Reganato to establish interim and permanent erosion and sedimentation controls.[2] A subsequent meeting between the parties failed to produce a remedial plan.

On May 26, 1988, Jonas Carpenter of DER's Bureau of Mining and Reclamation inspected the site in response to a complaint and found that soil was being removed from the site, an activity which required a mining permit under the Noncoal Surface Mining Conservation and Reclamation Act, Act of December 19, 1984, P.L. 1093, *as amended*, 52 P.S. §§ 3301–3326. Carpenter further noted that approximately thirty to thirty-five acres of the site appeared to have been affected. Carpenter then issued a compliance order citing Gaster with various mining violations including mining without a permit and mining without an approved erosion and sedimentation control plan. The order directed Gaster to cease mining operations immediately and to install erosion and sedimentation controls by June 17, 1988. Carpenter allowed Gaster to leave the brush in place, relying on Gaster's son's misstatement that Magargee instructed him not to remove the brush along Green Creek.

2. Also on May 10, 1988, DER's Bureau of Dams and Waterways Management, based on an April 14, 1988 inspection, issued a notice of violation informing Gaster that his activities on the site constituted violations of the Dam Safety and Encroachments Act (DSEA), Act of November 26, 1978, P.L. 1375, *as amended*, 32 P.S. §§ 693.1–693.27, and requesting that Gaster contact the Bureau within thirty days to arrange an administrative conference. At the time of this notice, the Bureau of Dams and Waterways Management was unaware of the administrative conference being held that same date under the auspices of the Bureau of Soil and Water Conservation.

On June 17, 1988, Gaster's legal counsel was advised that the Bureau of Mining and Reclamation would have primary jurisdiction over the site and that the Bureau would contact the Township to obtain necessary authorization for the remedial measures. On June 28, 1988, the trial court, on petition by the Township, ordered Gaster to stop removing soil from the site and stated explicitly that it should not be construed to prevent Gaster from taking remedial erosion and sedimentation control measures. At an inspection by Magargee and Carpenter conducted on July 14, 1988, they found that interim remedial measures had not been implemented and that a draft plan of the measures had not been submitted.

Consequently, on August 1, 1988, DER issued the order forming the basis of this appeal and directed Gaster, inter alia, to cease all activities on the site except for erosion and sedimentation control measures and activities necessary to comply with orders of the Township and the trial court; to file a remedial erosion and sedimentation control plan with the Conservation District; to remove the brush from the floodway; and to file a complete permit application. On September 30, 1988, Gaster submitted to Magargee an interim erosion and sedimentation control plan incorporating the measures agreed upon at the site meeting in May 1988 which Magargee approved. Subsequent inspections by Magargee in November and December 1988 and January 1989 revealed numerous uncorrected deficiencies, and finally, after inspection by Magargee in June 1989, the erosion and sedimentation control measures incorporated into the final revised remedial plan, after being implemented and periodically maintained, corrected the problems on the site.

Upon Gaster's appeal, the Board held that DER's order was authorized by law and was an appropriate exercise of discretion. Specifically, the Board found that although Gaster obtained Township authorization to conduct earth removal activities on 18.2 acres, he actually disturbed more than twenty-five acres without securing permits from DER and without possessing a complete erosion and sedimentation control plan; Gaster failed to install effective erosion and sedimentation

control facilities, thus causing accelerated erosion and deposition of sediment in waters of the Commonwealth; and Gaster, without permits from DER, placed brush and fill within the floodway of Green Creek. The Board also specifically rejected Gaster's complaint that site remediation was impeded by the involvement of three separate DER bureaus. The Board noted that despite the record revealing an unfortunate lack of coordination among the bureaus during the five-week period following May 10, 1988, these circumstances did not excuse the violations charged in DER's order because such violations had been committed prior to May 10, 1988. Furthermore, the Board rejected Gaster's arguments that the bureaus gave conflicting instructions, except in the one instance generated by Gaster's son's misinformation. In addition, the Board sustained Gaster's appeal with respect to the requirement of obtaining a dam safety and encroachments permit for a detention pond because its embankments did not exceed fifteen feet. Gaster appealed to this Court.

## II

At the outset, this Court's scope of review of an Environmental Hearing Board decision is limited to a determination of whether an error of law has been committed, whether constitutional rights have been violated, or whether any findings of fact are unsupported by substantial evidence. *Starr v. Department of Environmental Resources,* 147 Pa.Commonwealth Ct. 196, 607 A.2d 321 (1992). Furthermore, a reviewing court may interfere in an agency decision only when there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. *Slawek v. State Board of Medical Education & Licensure,* 526 Pa. 316, 586 A.2d 362 (1991).

Gaster argues that the Board's finding that he disturbed more than twenty-five acres, thus requiring a permit from DER under 25 Pa.Code § 102.31, is not supported by substantial evidence. Gaster cites the testimony of his own engineer, Reganato, whose estimate of the total disturbed area was 24.6 acres. Gaster asserts that Magargee's estimate of

the disturbed area improperly incorporated areas not disturbed, including areas which were covered with heavy brush and areas which had been stabilized with vegetation exceeding seventy to seventy-five percent coverage. However, there are numerous instances in the testimony indicating that the disturbed area exceeded twenty-five acres. Carpenter stated that the area affected was thirty to thirty-five acres. Laura Swiski, an inspector for the Township, said that sixty to seventy percent of the sixty-seven acre site was disturbed. Moreover, the Board specifically accepted Magargee's testimony and documentary evidence indicating that the disturbed area exceeded twenty-five acres and noted that photographs taken by Magargee on March 30, 1988 justify Magargee's disagreement with Reganato over the areas which Reganato had identified as non-disturbed. Hence, there is substantial evidence to support the Board's conclusion that Gaster disturbed more than twenty-five acres and made no pretense of doing it on smaller non-contiguous parcels.[3]

■ Gaster next contends that the Board erred in finding that he conducted earth moving activities on the site without an erosion and sedimentation control plan in violation of 25 Pa.Code §§ 102.5, 102.11–102.13. As of March 1987 when he received the soil removal permit from the Township, Gaster's erosion and sedimentation control plan met the standard set forth in 25 Pa.Code § 102.5. That plan, however, covered only 18.2 acres and by the time of the Township's revocation of Gaster's permit, his activity had disturbed a considerably larger area. Although Magargee realized that the plan was inadequate to protect the greater area involved and directed Gaster to submit a new plan by April 19, 1988, such compliance was not forthcoming. As the Board states in its opinion, "Gaster failed to meet this deadline and every subsequent deadline set for him. As a result, there was no erosion and sedimentation control plan for the disturbed area as of August 1, 1988 when DER issued the Order." Board Opinion, p. 21.

3. Gaster argues that the regulations regarding earth moving are unconstitutionally vague. However, this argument has not been previously raised and it is therefore waived.

A plan meeting the standards of 25 Pa.Code § 102.5 was not filed until September 30, 1988. Therefore, there is substantial evidence to support the Board's conclusion that Gaster's earth moving activities violated standards of 25 Pa.Code §§ 102.5, 102.11–102.13 once those activities proceeded beyond the 18.2 acres authorized by the site plan, which occurred in 1987 prior to the Township's cease and desist order.

■ Gaster next challenges the Board's finding that he placed brush, stumps, and fill material within the floodway of Green Creek without an encroachment permit in violation of the Dam Safety and Encroachments Act (DSEA), Act of November 26, 1978, P.L. 1375, *as amended,* 32 P.S. §§ 693.1–693.27. However, Gaster admits that during certain time periods brush, stumps, and fill material were placed within the floodway, although he asserts that the time period in question was shorter than that determined by the Board, and argues instead that responsibility for placement of fill and brush material should be limited to the days in which Gaster could perform because he was not under legal compulsion from one of the government agencies to remove the materials within the floodway. Therefore, Gaster asserts, no liability should be found between the Township's October 21, 1987 order and October 4, 1988, the date the Bureau of Mining and Reclamation withdrew its jurisdictional claim on the property.

The Board's observations in this regard are particularly instructive:

> [This] violation has been clearly established, however. The presence of this material on the northwestern bank of Green Creek was reported by Swiski in October of 1987 and by Megargee [sic] at the time of his first inspection on February 29, 1988. It was not removed completely until January or February 1989, despite repeated orders calling for its removal. The only conflicting instruction was manufactured by Gaster, Jr. when he told Carpenter, contrary to the fact, that the Delaware County Conservation District had told him not to remove the material. This misinformation, whether deliberately or negligently conveyed, cannot excuse

Gaster's disregard of § 6 of the DSEA, 32 P.S. § 693.6, which requires a permit for such an encroachment.

Board Opinion, p. 26. Hence, there is substantial evidence to support the Board's conclusion that Gaster placed material within a floodway without an encroachment permit.

■ Gaster argued before the Board and before this Court that he was prevented from maintaining and implementing effective erosion and sedimentation facilities by the conflicting orders issued by the Township and several bureaus of DER. Gaster asserts that any erosion and sedimentation was caused by the Township's October 21, 1987 order requiring that all remedial measures cease and desist. This assertion ignores the fact that the violations occurred in 1987 when Gaster went beyond the 18.2 acres covered by his original plan, and continued to at least May 10, 1988, the first date on which more than one DER bureau issued directions to Gaster. Furthermore, the Township's revocation of Gaster's soil removal permit did not, as Gaster claims, order that all activities on the site cease. Indeed, the Township directed Gaster in a September 2, 1987 letter to stop all work until appropriate corrective action was taken. Moreover, Gaster's argument that he was prevented by the Township's order from engaging in any activity on the site is undermined by the fact that Gaster continued to allow earth to be removed from the site after the October 21, 1987 order.[4]

It is clear that the Township's cease and desist order was not intended to interfere with Gaster's obligations to DER. Gaster, in fact, never raised the argument that the Township's order prevented him from implementing and maintaining erosion and sedimentation controls until Magargee became involved on February 29, 1988. The Board specifically rejected

---

4. Gaster also asserts that to subject him to civil and criminal liability is a violation of his right to due process because of the allegedly conflicting orders issued. Since this Court can find no such conflict, there is no basis for Gaster's due process argument. Moreover, the touchstone of due process is protection of the individual against arbitrary government action. *Commonwealth v. Heck,* 341 Pa.Superior Ct. 183, 491 A.2d 212 (1985), *aff'd,* 517 Pa. 192, 535 A.2d 575 (1987). A careful review of the record does not reveal arbitrary actions by either the Township or DER's various bureaus.

Gaster's argument that, but for governmental interference, he would have had effective erosion and sedimentation controls on the site in late 1987 or early 1988. As the Board points out, after the trial court made it clear that the Township's action had no bearing on Gaster's duty to comply with DER directives and after the jurisdictional uncertainty over DER's order had been removed, it still took Gaster more than six months to implement effective control measures.

■ Despite what the Board terms an unfortunate and perhaps inevitable lack of coordination among the bureaus involved in this matter during a five-week period following May 10, 1988, the Board found that these circumstances did not excuse the violations charged in DER's order because all of them had been committed prior to May 10, 1988. Also, the Board was unable to conclude that the bureaus gave conflicting instructions except in the one instance generated by Gaster's son's misinformation and Gaster does not specify in his brief to this Court how the various orders conflicted so as to prevent his compliance.

Accordingly, the Board's order must be affirmed.[5]

## ORDER

AND NOW, this 6th day of January, 1993, the order of the Environmental Hearing Board dated November 15, 1990 is

5. DER has submitted a bill of costs to this Court for consideration with the merits of Gaster's petition for review. See Pa.R.A.P. 2155. DER seeks to tax Gaster the costs to the Commonwealth of producing the supplemental reproduced record and the Commonwealth's brief. In January 1991, Gaster filed a designation of contents of the reproduced record. DER then forwarded to Gaster a proposed designation of parts of the record which DER deemed necessary. However, Gaster considered such parts of the record unnecessary for a determination of the issues presented. Under Rule 2155, the appellee shall advance the costs of including such parts of the record to the appellant. If the appellee fails to advance such costs within ten days afterward, the appellant may proceed without reproduction of the parts of the record designated by the appellee. DER declined to advance the costs of the supplemental record to Gaster, stating that budget difficulties facing the Commonwealth would make forwarding money to Gaster difficult. Since DER was compelled under Rule 2155 to advance these costs to Gaster but failed to do so, its bill of costs is hereby denied.

affirmed. The bill of costs submitted by the Department of Environmental Resources is denied.

KELLEY, Judge, dissenting.

I respectfully dissent. I believe that the petitioners constitutional rights have been violated and that the record clearly does not support the findings by the Environmental Hearing Board (Board).

I believe that the record supports that a manifest and flagrant abuse of discretion and/or an arbitrary execution of these duties and functions was imposed upon the petitioner.

The opinion of the Board would indicate that the petitioner was a flagrant insensitive violator of the statutes and regulations of this Commonwealth, as well as the Township of Concord, Delaware County. The record indicates, however, that the petitioner was a landowner, duly exercising his substantive rights in an attempt to cooperate with the township and the Department of Environmental Resources (DER), in order to rectify alleged violations.

The petitioner was battered about between the jurisdiction and conflicting orders of the County Conservation Office and DER. No less than three bureaus of the DER, at various times and without any coordination, were simultaneously inspecting, implementing or effecting conflicting corrective orders upon the petitioner for this property.

Finally, there was consolidation by DER with its various bureaus. The record shows substantial evidence of cooperation by the petitioner. The department imposed time limits that whenever they issued the citations, which were at issue before us, the book was then "thrown to the petitioners", notwithstanding his admitted cooperation in attempting to resolve the differences.

I find that the record reflects an intolerable conduct by DER toward this petitioner.

The statutes and regulations of the environmental nature, with the involvement of the federal and state and local governments, must be all considered in pari materia with the cooper-

ative oversight objective judgment of practicalities of what is humanly possible and reasonable whenever there is, as in this case, a multitude of uncoordinated overlapping jurisdictions in conflict with one another. I believe that it is incumbent upon governments to maintain an orderly and cooperative coordinated effort in the implementation of such broad multi-jurisdictional laws and regulations.

Accordingly, I would reverse the order of the Board.