Robert E. **BAEHLER**, Petitioner

v.

**DEPARTMENT OF ENVIRONMENTAL PROTECTION, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on briefs Sept. 10, 2004.

Decided Dec. 6, 2004.

---

Charles M. Watkins, Reading, for petitioner.

Joseph S. Cigan, Wilkes–Barre, for respondent.

BEFORE: SMITH–RIBNER, Judge, and SIMPSON, Judge, and MIRARCHI, JR., Senior Judge.

OPINION BY Judge SMITH–RIBNER.

Robert E. Baehler petitions for review from an order of the Environmental Hearing Board (Board) dismissing his appeal from a compliance order issued by the Department of Environmental Protection (Department) for violations of the Dam Safety and Encroachments Act (Act), Act of November 26, 1978, P.L. 1375, *as amended*, 32 P.S. §§ 693.1–693.27. Baehler contends that the Board erred in concluding that his takings claim was premature; erred in concluding that his due diligence in complying with the law was irrelevant; erred by not finding that he was prejudiced by the Department's failure to notify him of a complaint until eleven months later; and erred by concluding that he did not have a vested right to build his retirement home.

In 1992 and 1993 Baehler bought four contiguous lots on Lake Sophia in Susquehanna County, on which to build a retirement home. Baehler obtained a permit to install a septic system and hired a contractor to commence the installation. During the work, a contractor advised Baehler that his property might include wetlands and that he should contact the "environmental people" to inspect the property before leveling the ground with "fill."[1]

1. "*Fill*—Sand, gravel, earth or other material placed or deposited to form an embankment or raise the elevation of the land surface. The term includes material used to replace an area with aquatic life with dry land or to change the bottom elevation of a regulated

Baehler went to an unidentified government office, where he was informed by an unidentified woman that he need not worry about the existence of wetlands on his property.[2] Baehler was not ready to retire so the land sat without further development until 1999 when Baehler began work necessary to construct his home. Sometime during or after May 1999, Baehler had fill deposited on approximately two-tenths of an acre of his land in order to level the terrain and to make it suitable for constructing a home.

On September 11, 2000, Michael Tarconish, a water pollution biologist for the Department, inspected the property and concluded that fill had been deposited over wetlands. The Department sent Baehler a violation notice, and after additional correspondence and meetings failed to resolve the matter the Department issued the compliance order on April 8, 2002, charging Baehler with having placed fill in a wetlands area without a permit and providing the option of removing the fill or applying for an after-the-fact permit to allow some or all of the fill to remain in place. *See* Sections 3 (definition of "encroachment"), 6 (Permit requirement), 18 (Unlawful conduct), 20 (Enforcement orders) of the Act, 32 P.S. §§ 693.3, 693.6, 693.18, 693.20; 25 Pa.Code § 105.11 (Permit requirements).

The Board conducted a hearing on December 12, 2003, and it heard testimony from Tarconish and Baehler. Tarconish testified that when he inspected Baehler's property on September 11, 2000 it was obvious that the fill was deposited on a wetlands area. Tarconish related that he met with Baehler in October 2000 and in May 2001 and that at those meetings he explained to Baehler the options of either removing the fill or applying for a permit. Tarconish stated that he sent Baehler additional letters attempting to resolve the situation and that the Department issued the compliance order because Baehler did not reply. On cross-examination, Tarconish stated that to obtain a permit Baehler would have to pay a $350 permit fee, obtain a wetlands survey and an environmental assessment report and either replace the wetlands he had covered or pay between $5000 and $7500 into the Department's wetlands replacement fund. Tarconish did not know when the Department received the complaint that resulted in his inspection or whether the Department would guarantee Baehler a permit. Baehler testified that none of the contractors or municipal officials with whom he dealt told him that his land contained wetlands and that the woman he spoke to in 1992 at the office of the United States Department of Agriculture, Natural Resource Conservation Service (NRCS) assured him that he did not have to worry about wetlands on his property.

The Board credited Tarconish's testimony and in its May 5, 2004 opinion concluded that the fill placed on Baehler's land without a permit constituted an unlawful encroachment on wetlands in violation of Sections 3, 6(a), 18 and 20 of the Act, and the regulation at 25 Pa.Code § 105.11. The Board concluded that the Department had acted reasonably and in accordance with the law in issuing the

water of this Commonwealth." 25 Pa.Code § 105.1.

2. The government office that Baehler visited is not positively identified in the record. Board's Adjudication at p. 2 (Finding of Fact 8). During cross-examination, Baehler mentioned the United States Department of Agriculture, Natural Resources Conservation Service, but neither counsel confirmed that that was the office he visited. In the Brief of Appellant, Baehler's counsel states that Baehler visited that office.

compliance order, and because Baehler failed to apply for a permit the Board rejected his argument that the compliance order effected an unconstitutional, regulatory taking of property rights.[3]

Baehler repeats here the argument that the compliance order effects a regulatory taking of his property without compensation because attempting to secure a permit would require the expenditure of significant sums of money and the Department cannot guarantee an after-the-fact permit, and it is unreasonable to expect him to apply for a permit under those circumstances. He contends that the land is valueless without the fill and a house constructed on it, and he cites *Boise Cascade Corp. v. United States*, 296 F.3d 1339 (Fed.Cir.2002), to support the proposition that excessive fees associated with applying for a permit, which may not be issued, may result in a regulatory taking.[4]

■ In *Boise Cascade* the court did not state or imply that costs associated with obtaining a government issued land-use permit may effect a regulatory taking. Instead, the court emphasized a well-established principle that permit requirements as a form of land-use regulation do not constitute a taking and that not until a permit application has been denied and the effect of the denial is to prevent economically viable use of the land can the issue of a taking be considered. *See also Tahoe–Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002); *United States v. Riverside Bayview*

*Homes, Inc.*, 474 U.S. 121, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985); *Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981). Because Baehler has not availed himself of the administrative process through which he may obtain some relief, the Court agrees that his claim of an unconstitutional taking is premature.

■ Baehler next argues that because the Department received a complaint on November 11, 1999 but did not inspect the property until September 11, 2000 it should be estopped from enforcing the compliance order, for had the Department acted within a reasonable time Baehler would not have deposited the fill resulting in the violation notice. This argument is unpersuasive because Tarconish testified that he did not know when the complaint was received and Baehler points to no other source in the record that verifies the date. Additionally, Baehler has not stated a legally sufficient estoppel claim, *i.e.*, misleading words, conduct or silence by the government agency, unambiguous proof that he reasonably relied upon the misrepresentation and the lack of a duty to inquire as to the correct facts. *Baldwin Health Center v. Department of Public Welfare*, 755 A.2d 86 (Pa.Cmwlth.2000).

■ Baehler's final argument is that he has a vested right to the building permit issued by the local municipality and that this right should preclude the Department from enforcing its compliance order.

---

3. The Commonwealth Court's review of the Board's final order is limited to determining whether the Board's findings of fact are supported by substantial evidence and whether the Board committed an error of law or a violation of constitutional rights. *Gaster v. Department of Environmental Resources*, 152 Pa.Cmwlth. 505, 620 A.2d 61 (1993).

4. The greatest single item of expense in obtaining an encroachment permit appears to be the $5000 to $7500 payment into the Department's wetlands replacement fund. However, Tarconish's testimony indicates that that payment would be made after the permit is granted, and thus the funds are not at risk of being lost in an unsuccessful attempt to obtain a permit.

Baehler relies on *Department of Environmental Resources v. Flynn*, 21 Pa.Cmwlth. 264, 344 A.2d 720 (1975), in which the Court reiterated the principle that a property owner could hold a vested right to a mistakenly or unlawfully issued building permit if the owner satisfied the following five criteria: due diligence in attempting to comply with the law; good faith throughout the proceedings; expenditure of substantial unrecoverable funds; expiration without appeal of the period during which an appeal could have been taken from the issuance of the permit; and insufficiency of evidence to prove that the public health, safety or welfare would be adversely affected by the use of the permit. *See also Petrosky v. Zoning Hearing Board of the Township of Upper Chichester, Delaware County*, 485 Pa. 501, 402 A.2d 1385 (1979). The Department counters that *Flynn* is irrelevant because it states only that a property owner may have a vested right in a permit *already acquired;* Baehler has not even applied for the encroachment permit and the acquisition of a building permit does not excuse his compliance with permit requirements mandated by other laws.[5]

It must be emphasized that, unlike in *Flynn*, the Department has not categorically denied a property owner a vested right to develop his land; it is simply requiring him to satisfy additional conditions regarding encroachments on wetlands. Although the Board did not specifically examine the five criteria set forth in *Flynn*, it is evident that the Board concluded that Baehler had not acted with due diligence in attempting to comply with the law. The Board found Baehler's account of his visit to a local NRCS office too vague, and the Court cannot substitute its judgment for that of the Board in matters relating to credibility and the weight to be accorded specific testimony.[6] *Leatherwood, Inc. v. Department of Environmental Protection*, 819 A.2d 604 (Pa.Cmwlth. 2003).

In *Flynn* the Court stated that the Department was obligated by the then-existing version of The Clean Streams Law, Act of June 22, 1937, P.L.1987, *as amended*, 35 P.S. §§ 691.1–691.1001, to demonstrate that the proposed sewage system would "create[] a danger of pollution of the waters of the Commonwealth," and when the evidence showed otherwise the Court concluded that Flynn had satisfied the fifth criterion, *i.e.*, "insufficiency of the evidence to prove that . . . the public health, safety or welfare would be adversely affected by the use of the permit." *Flynn*, 344 A.2d at 725. In this case, the Act does not impose on the Department a requirement of prov-

5. In *Flynn* the property owner had not obtained the Department's approval, by permit or otherwise, to install a sewage system on his property, and in fact it was impossible to install a system that did not violate Department regulations. Nevertheless, the Court concluded: "In our view, Flynn has acquired a vested right to use the sewage and building permits which he obtained from the Township." *Flynn*, 344 A.2d at 723.

6. The Board found: "In response to the contractor's warning, Baehler inquired of an unidentified woman at an unidentified governmental office[] who told him 'you have no problems there'. " Board's Adjudication at p.

2(Finding of Fact 8). The Board later commented: "Baehler's first point is that he performed the site preparation activities in good faith and with due diligence. We believe that the record falls well short of showing a factual predicate for that claim (see, e.g., FOF 8). . . ." Board's Adjudication at p. 3. In contrast, in *Flynn* testimony by Flynn and a municipal official established that Flynn hired an expert consultant recommended by the municipality to examine his property, that both Flynn and the municipality relied on the expert's findings and that installation of the sewage system posed no threat of water pollution.

ing harm, and in any case the Department offered unrebutted testimony regarding the negative effects of encroaching on wetlands. Thus the Court cannot conclude that Baehler has satisfied the fifth criterion for claiming a vested right in his building permits. Accordingly, because the Board's decision contains no reversible error, the order of the Board is affirmed.

## ORDER

AND NOW, this 6th day of December, 2004, the Environmental Hearing Board's order of May 5, 2004 dismissing the appeal of Robert E. Baehler is hereby affirmed.