IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Salvatore Pileggi,                          :
                          Petitioner        :
                                            :
          v.                                : No. 1477 C.D. 2024
                                            : Argued:  December 8, 2025
Department of Environmental                 :
Protection (Environmental Hearing           :
Board),                                     :
                          Respondent        :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION
BY JUDGE WALLACE                            FILED:  January 7, 2026


Salvatore Pileggi (Pileggi) petitions for review of the Environmental Hearing Board's (Board) October 2, 2024 Order, dismissing his appeal of the Department of Environmental Protection's (DEP) August 11, 2022 Administrative Order.  Before this Court, Pileggi argues the Board misinterpreted DEP's regulations by concluding he must obtain a National Pollutant Discharge Elimination System (NPDES) permit and submit an erosion and sediment control plan (E&S plan).  After careful review, we affirm in part, vacate in part, and remand.

## BACKGROUND

Pileggi is the owner of approximately 60 acres of land (Property) in Newtown Township, Lackawanna County.  Adjudication, 10/2/24, at 3.  K.W.F., Inc. sold the

Property to Pileggi in 1999. *Id.* Before selling the Property, K.W.F., Inc. developed plans for a 10-lot subdivision known as the "Wooded Lane Subdivision." *Id.* Pileggi now owns lots 3-10 of the Wooded Lane Subdivision. *Id.* Photographs indicate this portion of the Property remained undeveloped as of 2017. *Id.* at 22.

On April 19, 2021, Jerry Stiles (Stiles), District Manager of the Lackawanna County Conservation District, inspected the Property as a result of "complaints from the public." Adjudication, 10/2/24, at 4. Stiles' inspection revealed "[a] significant but indeterminate amount of earth disturbance work . . . on the Property." *Id.* Stiles believed, based on this inspection and communications with Pileggi, "that there were plans underway for a residential subdivision." *Id.* at 5.

After additional inspections, a Compliance Notice, and a Notice of Violation, DEP issued an Administrative Order, dated August 11, 2022, concluding Pileggi had conducted earth disturbance work on the Property without complying with the Clean Streams Law[1] and DEP regulations. Adjudication, 10/2/24, at 5; Reproduced Record (R.R.) at 27a-38a. Specifically, the Administrative Order directed Pileggi to do the following:

> 1. Within seven (7) calendar days of the executed date of this Administrative Order, Pileggi shall implement [best management practices (BMPs)] in accordance with [DEP's] regulations and the Erosion and Sediment Pollution Control Manual, Commonwealth of Pennsylvania, Department of Environmental Protection, No. 363-2134-008 (April 2000), as amended and updated.
>
> 2. Within thirty (30) calendar days of the executed date of this Administrative Order, Pileggi shall submit an adequate E&S control plan, that complies with Section 102.4(b)(5)(i)-(xv) of [DEP's] regulations 25 Pa. Code § 102.4(b)(5)(i)-(xv).

---

[1] Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §§ 691.1-691.1001.

3. Within one hundred twenty (120) calendar days of the executed date of this Administrative Order, Pileggi shall submit an adequate NPDES permit application as per Section 102.5 of [DEP's] regulations, 25 Pa. Code § 102.5.

4. Upon receipt of this Order, Pileggi shall cease earth disturbance activities until the required permits and plans, referenced in Paragraphs 1-3 above, are approved by the [Lackawanna County Conservation] District.

R.R. at 37a.

Pileggi filed an appeal to the Board. In part, Pileggi argued it was unnecessary for him to obtain an NPDES permit because DEP's regulations include an exception for "road maintenance activities."[2] Pileggi's Prehearing Mem., 2/1/24, at 17-19. He alleged his work on the Property included "property and road maintenance activities

---

[2] The regulations define road maintenance activities as follows:

(i) Earth disturbance activities within the existing road cross-section or railroad right-of-way including the following:
    (A) Shaping or restabilizing unpaved roads.
    (B) Shoulder grading.
    (C) Slope stabilization.
    (D) Cutting of existing cut slopes.
    (E) Inlet and endwall cleaning.
    (F) Reshaping and cleaning drainage ditches and swales.
    (G) Pipe cleaning.
    (H) Pipe replacement.
    (I) Support activities incidental to resurfacing activities such as minor vertical adjustment to meet grade of resurfaced area.
    (J) Ballast cleaning.
    (K) Laying additional ballast.
    (L) Replacing ballast, ties and rails.
    (M) Other similar activities.
(ii) The existing road cross-section consists of the original graded area between the existing toes of fill slopes and tops of cut slopes on either side of the road and any associated drainage features.

25 Pa. Code § 102.1.

due to flood damage." *Id.* at 4. Further, Pileggi argued the regulations apply only if someone is "proposing earth disturbance activities," and he was not "proposing" any earth disturbance. *Id.* at 19-20. The Board held a hearing on February 21, 2024, and February 22, 2024, at which DEP presented the testimony of Stiles; Timothy Craven, Emergency Response Coordinator for DEP's Northeast Regional Office; and Brian Mackowski (Mackowski), Chief of Compliance for DEP's Waterways and Wetlands Program. Pileggi testified on his own behalf.

By order dated October 2, 2024, the Board dismissed the appeal. The Board concluded Pileggi's activities on the Property involved greater than one acre of earth disturbance and constituted road construction rather than "road maintenance" within the exception to DEP's regulations because the activities "went beyond the original cross-section of the roads." Adjudication, 10/2/24, at 7, 12-17. Moreover, the Board concluded Pileggi was "proposing earth disturbance activities" even if his work on the Property was completed. *Id.* at 17-19. The Board explained accepting Pileggi's claim to the contrary would create an absurd result by "giv[ing] credence to the idea that one can violate a regulation and then ask for forgiveness rather than first seeking permission." *Id.* at 19.

In addition, the Board considered whether Pileggi's work on the Property was "pursuant to a common plan for development or sale." Adjudication, 10/2/24, at 18. The Board reasoned that if the work was pursuant to a common plan for development or sale, then it could "conclude that [Pileggi] is indeed 'proposing' earth disturbance activity . . . because further work will be performed at some future time to complete the subdivision." *Id.* The Board reviewed evidence establishing Pileggi was in the process of developing the Wooded Lane Subdivision:

> Mr. Pileggi conducted over one acre of earth disturbance, which primarily involved work done on Wooded Lane and Bonnie Circle. Mr.

4

Mackowski observed survey markers for several different lots in the Wooded Lane Subdivision, as well as at least one real estate sign that indicated lots were for sale. It is undisputed that plans for the Wooded Lane Subdivision came into existence in 1977, long before Mr. Pileggi bought the property it resided on. No evidence was presented that Mr. Pileggi sought to undo the recorded subdivision plans to eliminate the existence of the subdivision. Mr. Mackowski carried out further research into Mr. Pileggi's property and found records of online listings of Lot 5 for sale, as well as an easement agreement between Mr. Pileggi and PPL Electric Utilities. This easement was from an existing pole on Wooded Lane that extended over to Bonnie Circle. At the time of the hearing, Lot 5 was still for sale.

. . . .

The Department's trial Exhibit 18(a) consists of three (3) separate images labeled DEP 137(a), DEP 138(a), and DEP139(a). DEP 137(a) is dated September 30, 2017. It is an aerial Google Earth image that shows the area in question on the Property in a generally undisturbed state. Wooded Lane is nearly impossible to make out due to extensive tree cover, and there is no indication that Bonnie Circle even exists; the area is just a grassy field.

By contrast, DEP 138(a) is a Google Earth image of the same area taken two years later, on September 16, 2019. Wooded Lane appears to still be a two-lane dirt farm track with tree cover. However, in the field to the west of Wooded Lane, an area had been mowed into the shape of a typical residential cul-de-sac. Not only that, but there appear to be additional side roads that had been mowed through the field, which would indicate additional roads intended to be laid out for a subdivision. DEP 139(a) is a Google Earth image of the same area taken another three years later, on May 9, 2022. That image clearly shows that Wooded Lane had been widened and improved with stone aggregate, many trees removed, and Bonnie Circle had also been similarly improved. There are additional support areas that show earth disturbance and compacted soils in and around Wooded Lane and Bonnie Circle.

These images clearly show that in 2017, Wooded Lane was barely identifiable, and Bonnie Circle did not exist, except maybe on paper, the proverbial twinkle in a mother's eye. By 2019, the evidence shows that the field in which Bonnie Circle existed on paper had been mowed into the shape of a typical residential cul-de-sac, and not long

after that, it had been improved with stone aggregate. There would simply be no logical, reasonable explanation for this action, and Mr. Pileggi did not offer one, other than it was done with the intent to construct a subdivision on the Property. Mr. Pileggi's explanation that it was done to repair flood damage, and that the aggregate was put down on Wooded Lane by a prior owner (which would have had to have been prior to his taking ownership in 1999), is simply not credible.

*Id.* at 20-24 (footnote omitted).

Pileggi filed a petition for review in this Court. He argues DEP's regulations do not require him to obtain an NPDES permit or submit an E&S plan because he is not "proposing an earth disturbance activity." Pileggi's Br. at 22-24. Pileggi asserts he has no intent of developing the Property, and it would be "arbitrary and punitive" to require that he obtain an NPDES permit and submit an E&S plan for work he did in the past. *Id.* at 18-19, 22-24. Further, Pileggi contends the appropriate remedy if a person performs work without a permit is for DEP to issue an order directing that person to stop. *Id.* at 27. Pileggi argues DEP did not meet its burden of proof in this case, but the Board still found in favor of DEP because of reasons outside the record. *Id.* at 24-25. He also asserts that NPDES permits apply to "point source" discharges, that he is not proposing any discharges, and that the work he did on the Property did not result in any discharges or pollution.[3] *Id.* at 25-26, 29-31.

## DISCUSSION

We review the Board's Order to determine "whether the Board committed an error of law, whether the Board violated constitutional rights, or whether substantial evidence supports its findings of fact." *Glahn v. Dep't of Env't Prot. (Env't Hearing*

---

[3] Pileggi appears to claim he applied for a permit, but DEP denied his application "because he had no intention to discharge to waters." Pileggi's Br. at 6. Pileggi does not cite anything in the record in support of this assertion. Our review of the record reveals testimony by Pileggi that he requested an application for an NPDES permit, and that DEP refused to provide an application. R.R. at 393a. He did not testify DEP refused to provide the application "because he had no intention to discharge to waters." *See id.*

6

*Bd.*), 298 A.3d 455, 459 n.4 (Pa. Cmwlth. 2023). The Board is the fact-finder in this matter "and has discretion regarding witness credibility, weight of the evidence, and resolution of conflicts of evidence." *Brockway Borough Mun. Auth. v. Dep't of Env't Prot.*, 131 A.3d 578, 586-87 (Pa. Cmwlth. 2016). This appeal also requires the Court to interpret DEP's regulations, which presents "a question of law, and therefore, the standard of review is *de novo*, *i.e.*, a reviewing court is not bound by or required to defer to a prior legal conclusion." *Dep't of Env't Prot. v. Clearfield Cnty.*, 283 A.3d 1275, 1283 (Pa. Cmwlth. 2022).

DEP's Erosion and Sediment Control regulations at Title 25, Chapter 102 of the Pennsylvania Code control the outcome of Pileggi's appeal. The NPDES permit regulation provides as follows:

> (a) Other than agricultural plowing or tilling activities, animal heavy use areas, timber harvesting activities or road maintenance activities, a person proposing an earth disturbance activity[4] that involves equal to or greater than 1 acre (0.4 hectare) of earth disturbance, or an earth disturbance on any portion, part, or during any stage of, a larger common plan of development or sale that involves equal to or greater than 1 acre (0.4 hectare) of earth disturbance, shall obtain an individual NPDES Permit or coverage under a general NPDES permit for Stormwater Discharges Associated With Construction Activities prior to commencing the earth disturbance activity. In addition to other applicable requirements, persons required to obtain an Individual NPDES Permit for Stormwater Discharges Associated With Construction Activities for projects proposed in special protection

---

[4] The regulations define an earth disturbance activity as:

> A construction or other human activity which disturbs the surface of the land, including land clearing and grubbing, grading, excavations, embankments, land development, agricultural plowing or tilling, operation of animal heavy use areas, timber harvesting activities, road maintenance activities, oil and gas activities, well drilling, mineral extraction, and the moving, depositing, stockpiling, or storing of soil, rock or earth materials.

25 Pa. Code § 102.1.

watersheds shall evaluate and use BMPs[5] in accordance with antidegradation requirements in §§ 102.4(b)(6) and 102.8(h) (relating to erosion and sediment control requirements; and [post-construction stormwater management] requirements) regardless of whether the discharge is new, additional or increased.

25 Pa. Code § 102.5(a).

In addition, DEP's regulations include the following requirement with respect to erosion and sediment control:

(b) For earth disturbance activities other than agricultural plowing or tilling or animal heavy use areas, the following erosion and sediment control requirements apply:

(1) The implementation and maintenance of E&S BMPs are required to minimize the potential for accelerated erosion and sedimentation, including those activities which disturb less than 5,000 square feet (464.5 square meters).

(2) A person proposing earth disturbance activities shall develop and implement a written E&S [p]lan[6] under this chapter if one or more of the following criteria apply:

(i) The earth disturbance activity will result in a total earth disturbance of 5,000 square feet (464.5 square meters) or more.

(ii) The person proposing the earth disturbance activities is required to develop an E&S [p]lan under this chapter or under other Department regulations.

---

[5] BMPs are "[a]ctivities, facilities, measures, planning or procedures used to minimize accelerated erosion and sedimentation and manage stormwater to protect, maintain, reclaim, and restore the quality of waters and the existing and designated uses of waters within this Commonwealth before, during, and after earth disturbance activities."  25 Pa. Code § 102.1.

[6] An E&S plan is "[a] site-specific plan consisting of both drawings and a narrative that identifies BMPs to minimize accelerated erosion and sedimentation before, during and after earth disturbance activities."  25 Pa. Code § 102.1.

> (iii) The earth disturbance activity, because of its proximity to existing drainage features or patterns, has the potential to discharge to a water classified as a High Quality or Exceptional Value water under Chapter 93 (relating to water quality standards).

25 Pa. Code § 102.4(b).

Initially, our review of the record supports the Board's conclusion that Pileggi conducted greater than one acre of earth disturbance, requiring that he first obtain an NPDES permit and develop and implement an E&S plan, including E&S BMPs. *See* 25 Pa. Code §§ 102.4(b), 102.5(a). During the hearing, Mackowski testified Pileggi conducted approximately 1.48 acres of earth disturbance. R.R. at 303a-04a. Further, Pileggi's actions establish that he was in the process of developing the Wooded Lane Subdivision, i.e., that this earth disturbance occurred "on any portion, part, or during any stage of, a larger common plan of development or sale." 25 Pa. Code § 102.5(a). As the Board summarized above, Pileggi surveyed or placed survey markers on the Property, listed a lot for sale, and granted a utility easement. Photographs even show Pileggi constructed a residential cul-de-sac. *Id.* at 20a-24a. It was within the Board's discretion to find Pileggi's claims to the contrary incredible. *See Brockway Borough Mun. Auth.*, 131 A.3d at 586-87.

We also conclude Pileggi's contention that he did not need an NPDES permit because there was no discharge from a "point source" is meritless.[7] Pileggi relies on Chapter 92A of DEP's regulations, which provide that "[a] person may not discharge

---

[7] Our review belies the Department's argument that Pileggi waived this claim by failing to raise it below. Department's Br. at 22-23; *see, e.g.*, Pileggi's Pre-H'rg Mem., 2/1/24, at 1 (contending "[t]here was no construction activity, no point source or any pollution").

pollutants from a point source[8] into surface waters" without an NPDES permit.  *See* 25 Pa. Code § 92a.1(b).  However, the Administrative Order determined Pileggi was in violation of Chapter 102 of the regulations, rather than Chapter 92A.  Chapter 102 is specifically concerned with minimizing "the potential for accelerated erosion and sedimentation" and managing "post construction stormwater."  25 Pa. Code § 102.2.  These regulations require NPDES permits for certain earth disturbance activities that create pollution or the potential for pollution,[9] such as the apparent construction of a residential subdivision in this matter, and they are not contingent on the existence of a point source discharge.[10]

That said, DEP's Administrative Order appears to require Pileggi to obtain an NPDES permit and submit an E&S plan even if he has no intention of continuing to develop the Property.  DEP does not dispute this, contending it "can and does require

---

[8] The regulations define a point source as:

> A discernible, confined and discrete conveyance, including, but not limited to, any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, [Concentrated Aquatic Animal Production Facility], [Concentrated Animal Feeding Operation], landfill leachate collection system, or vessel or other floating craft, from which pollutants are or may be discharged.

25 Pa. Code § 92a.2.

[9] In addition, Pileggi points to language in Section 102.5(a), referencing "a general NPDES permit for Stormwater Discharges Associated With Construction Activities," *see* 25 Pa. Code § 102.5(a), and emphasizes the words "for Stormwater Discharges."  Pileggi fails to recognize the explanation in the regulations that this type of permit is necessary not only for "discharge[s]" but for "potential discharge[s.]"  25 Pa. Code § 102.1.

[10] In the alternative, to the extent there is any ambiguity, the Court will defer to DEP's interpretation of its own regulations.  *See Lutheran Home at Kane v. Dep't of Hum. Servs.*, 318 A.3d 164, 179-80 (Pa. Cmwlth. 2024).  We observe our Supreme Court has granted allocatur to consider, among other things, whether "[c]ourts may only determine a regulation is ambiguous after exhausting all available tools of construction to find the regulation is genuinely ambiguous." *Lutheran Home at Kane v. Dep't of Hum. Servs.*, 333 A.3d 305 (Pa. 2025).

after-the-fact . . . permits." DEP's Br. at 20. The Board discussed the Administrative Order's permit requirement as follows:

> While we question the logic behind [DEP's] order requiring [Pileggi] to apply for a permit for this particular work, we do not disturb the remedies in the order. There may be policy reasons that we are unaware of, or perhaps post-construction stormwater management issues that would be part of the permit. Mr. Pileggi is also obligated by law to comply with [DEP] regulation 25 Pa. Code § 102.5 if he eventually intends on further developing the Wooded Lane Subdivision.

Adjudication, 10/2/24, at 24.

We conclude the Board erred by accepting the remedies in the Administrative Order when the Board appeared to acknowledge it did not understand DEP's reasons for imposing an after-the-fact permit requirement and relied on speculation that DEP may have some policy reason for its actions. Although there may be occasions when an after-the-fact permit requirement is appropriate, the Board recognized its review of the Administrative Order is *de novo*, meaning it hears the matter anew, and DEP has the burden of proof. Adjudication, 10/2/24, at 9-10.[11] Importantly, "[i]f . . . DEP acts with discretionary authority, then the Board, based upon the record made before it, may substitute its discretion for that of DEP and modify any DEP action based on the evidence presented before the Board." *Gibraltar Rock, Inc. v. Pa. Dep't of Env't Prot.*, 316 A.3d 668, 677 (Pa. Cmwlth. 2024) (en banc), *reconsideration denied* (June 27, 2024), *appeal denied*, 332 A.3d 770 (Pa. 2025). To the extent DEP failed to justify the remedies in its Administrative Order, or the Board did not believe those remedies were proper, the Board should not have imposed them on Pileggi.

---

[11] *See* 25 Pa. Code § 1021.122(b)(4) (stating DEP "has the burden of proof . . . [w]hen it issues an order"); *Pa. Trout v. Dep't of Env't Prot.*, 863 A.2d 93, 106 (Pa. Cmwlth. 2004) (explaining, "when an appeal is taken from DEP to the [Board], the [Board] is required to conduct a hearing *de novo*").

11

We agree with the Board's reasoning that a landowner may not perform earth disturbance activities requiring an NPDES permit on his or her property and simply evade DEP's regulations by claiming the activities are complete and no further work is being "proposed." Such an interpretation would reward landowners who violated the law and creates an absurd result. *See DeNaples v. Pa. Gaming Control Bd.*, 178 A.3d 262, 269 (Pa. Cmwlth. 2018) (recognizing regulations should not be interpreted to create absurd or unreasonable results).

Nonetheless, DEP's regulations provide methods of enforcing NPDES permit requirements other than an after-the-fact permit, such as issuing "orders to remediate or restore." 25 Pa. Code § 102.32(a)(3). DEP directs the Court's attention to *Baehler v. Department of Environmental Protection*, 863 A.2d 57, 59 (Pa. Cmwlth. 2004), a case in which the petitioner deposited fill on wetlands without a permit. We observe *Baehler* is distinguishable because DEP allowed the petitioner in that matter to either obtain an after-the-fact permit or forego a permit application by removing the fill he deposited. DEP's Administrative Order at issue here provides Pileggi with no option but to obtain an after-the-fact permit.

## CONCLUSION

Based on the foregoing, we affirm the Board's October 2, 2024 Order insofar as it concluded Pileggi needed to obtain an NPDES permit and submit an E&S plan before beginning earth disturbance activity on his Property. However, we vacate the Board's Order insofar as it adopted the remedies specified in DEP's August 11, 2022 Administrative Order, and we remand for the Board to reconsider that portion of its decision, mindful that its review of DEP's Administrative Order is *de novo*, and DEP has the burden of proof in this proceeding. The Board may consider on remand whether an after-the-fact permit requirement is appropriate, whether to add

12

alternative remedies, or whether to impose different remedies altogether, but the Board must articulate a reasoned basis for its decision on the existing record and may not rely on speculation. We caution the Board that it should only consider the evidence and legal argument that DEP presented to the Board and may not accept any DEP reasoning that came to light after the Board's decision.

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Salvatore Pileggi, :
      Petitioner :
           :
    v. : No. 1477 C.D. 2024
           :
Department of Environmental :
Protection (Environmental Hearing :
Board), :
      Respondent :

# **O R D E R**

  **AND NOW**, this 7th day of January 2026, the Order of the Environmental Hearing Board, dated October 2, 2024, is **AFFIRMED IN PART** and **VACATED IN PART**, and the case is **REMANDED** consistent with the foregoing decision.

  Jurisdiction relinquished.

             _____
             STACY WALLACE, Judge